834 F.2d 1561
 Raymond Robert CLARK, Petitioner-Appellant,
v.
Richard L. DUGGER, Secretary, Florida Department of
Corrections, Tom Barton, Superintendent, Florida
State Prison, Robert A. Butterworth,
Attorney General, State of
Florida,
Respondents-
Appellees.
 No. 86-3022.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 15, 1987.
 
 Larry H. Spalding, Director Office of Capital Collateral Representative, Mark Evan Olive, Chief Asst. Capital Collateral Representative, Tallahassee, Fla., for petitioner-appellant.
 Michael J. Kotler, Peggy A. Quince, Asst. Attys. Gen., Tampa, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.
 VANCE, Circuit Judge:
 
 
 1
 Raymond Clark was convicted of first degree murder, kidnapping, and extortion by a jury in Pinellas County, Florida. Following the penalty phase of the trial, Clark was sentenced to death for the murder conviction. He also was sentenced to life imprisonment for the kidnapping conviction and 15 years imprisonment for the extortion conviction, with the sentences to run consecutively. On direct appeal the Florida Supreme Court affirmed the convictions and sentences, Clark v. State, 379 So.2d 97 (Fla.1979), and the Supreme Court denied certiorari. Clark v. Florida, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 374 (1981). Clark filed for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. After an evidentiary hearing, his Rule 3.850 motion was denied. Clark appealed, but the Florida Supreme Court affirmed the lower court's decision. Clark v. State, 460 So.2d 886 (Fla.1984). On March 13, 1985, the Governor of Florida signed Clark's death warrant. Clark then filed a second Rule 3.850 motion which the Florida courts again denied. See Clark v. State, 467 So.2d 699 (Fla.1985). On April 12, 1985, Clark filed this 28 U.S.C. Sec. 2254 petition for a writ of habeas corpus with the United States District Court for the Middle District of Florida. After reviewing the record of Clark's trial and post-conviction state court proceedings, the district court denied his petition. Clark now appeals.
 
 A. Factual Background
 
 2
 The evidence presented at trial established the following. In need of money, Clark formulated a plan to kidnap someone at a bank and demand money from that person. On April 27, 1977 Clark and Ty Johnston, a juvenile who lived with Clark, parked Clark's Chevrolet Blazer in the parking lot of a bank. The two awaited the owner of a white Cadillac. Clark was armed with a .38 caliber pistol. When David Drake, a 49-year old businessman who had been arranging a real estate closing, returned to his automobile, he was abducted by Clark. Clark got into the passenger's side of the Cadillac and ordered his victim to drive to a deserted area. After over an hour of driving, Drake was made to park in a secluded spot. He was ordered at gunpoint to get out of the vehicle. Clark then commanded Drake to disrobe to his undershorts and forced Drake to write a check on his personal account payable to cash in the amount of $5,000. Clark tied the victim's hands behind his back with wire. Clark then marched Drake into the bushes, forced him to kneel down, and shot Drake twice in the back of the head.
 
 
 3
 After the killing, Clark and Johnston drove back into town where they attempted to cash the victim's check. They drove the Cadillac to a secluded location where they wiped it down to eliminate any fingerprints. Over the next few weeks, Clark made threatening phone calls to Drake's son demanding $10,000 for his father's safe return.
 
 B. Issues
 
 4
 Initially petitioner presented six issues for review:
 
 
 5
 (1) whether the trial court's refusal to appoint a psychiatrist to assist the defense violated Clark's constitutional rights;
 
 
 6
 (2) whether the court's refusal to order the jury to retire from their deliberations coerced a verdict in violation of Clark's constitutional rights;
 
 
 7
 (3) whether Clark was denied effective cross-examination of a key witness in violation of the sixth amendment;
 
 
 8
 (4) whether the court's refusal to grant Clark's motion for a bill of particulars in preparation for the sentencing phase denied him due process;
 
 
 9
 (5) whether Clark was denied a proper proportionality review in violation of the eighth and fourteenth amendments; and
 
 
 10
 (6) whether Clark was denied the effective assistance of counsel in violation of his sixth amendment rights.
 
 
 11
 A supplemental brief filed subsequent to oral argument raised a number of other issues, only one of which we need address:[1]
 
 
 12
 (7) whether the trial court improperly restricted the consideration of nonstatutory mitigating circumstances during the penalty phase of Clark's trial.
 
 C. Discussion
 1. Clark's Request for a Psychiatric Expert
 
 13
 Prior to trial, the defendant's counsel requested that the trial court appoint a psychiatric expert to assist her in preparing an insanity defense. At the time of Clark's trial, Florida Rule of Criminal Procedure 3.210 provided in pertinent part:[2]
 
 
 14
 (c) Insanity at Time of Offense; Appointment of Expert Witnesses. When ... the existence of insanity on the part of the defendant at the time of the alleged commission of the offense charged becomes an issue in the cause, the court may appoint one or more disinterested and qualified experts, not exceeding three, to examine the defendant.
 
 
 15
 This rule contemplated that the expert's findings were to be made available to the court and the prosecution. In contrast, the motion filed by Clark's counsel sought the appointment of a psychiatric expert who would report confidentially to the defense. At a hearing on this motion, Clark's counsel presented no evidence or argument as to why Clark should be entitled to the appointment of a private psychiatrist. Defendant's counsel merely stated that if Clark had sufficient funds, he would have hired his own expert. On this bare assertion and counsel's refusal to make a Rule 3.210 motion, the trial court refused to appoint a psychiatric expert to assist only the defense. Clark now contends that this refusal violated his rights under the sixth, eighth, and fourteenth amendments.[3]
 
 
 16
 Clark relies heavily on the recent Supreme Court decision in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In Ake, the defense counsel requested a psychiatric examination to determine the defendant's sanity at the time of the offense. The trial court denied this request, reasoning that the State had no constitutional duty to provide such an examination. The Supreme Court reversed:
 
 
 17
 We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
 
 
 18
 Id. at 83, 105 S.Ct. at 1097. Clark argues that applying the Ake strictures yields the conclusion that his constitutional rights were abridged through the trial court's failure to grant Clark's motion for a psychiatric expert to assist his counsel.
 
 
 19
 Petitioner reads Ake too broadly. The Supreme Court was clear that the constitutional duty to provide psychiatric assistance arose "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial." Id. at 74, 105 S.Ct. at 1092. The Supreme Court recognized that the appointment of a psychiatrist was not necessary in most cases; rather, only in those instances where a defendant makes a preliminary showing that a psychiatrist's participation may be significant to the outcome of the trial is the government's interests in its fisc overcome. Id. at 83, 105 S.Ct. at 1097. As the Supreme Court stated in Ake:
 
 
 20
 A defendant's mental condition is not necessarily at issue in every criminal proceeding, however, and it is unlikely that psychiatric assistance ... would be of probable value in cases where it is not. The risk of error from denial of such assistance, as well as its probable value, are most predictably at their height when the defendant's mental condition is seriously in question. When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent.
 
 
 21
 Id. at 82-83, 105 S.Ct. at 1096-97.
 
 
 22
 Clark's counsel failed to make the threshold showing necessary to mandate the assistance of a psychiatrist. Since defendant's counsel presented no evidence or argument as to why Clark's sanity was relevant to his defense, the trial court had no reason to grant this request for a psychiatric examination.[4] Clark had not exhibited behavior which would have led the trial judge or counsel to question his sanity.[5] Although Clark's counsel had information concerning a prior homicide in California that might have raised the insanity issue, this information was never brought to the trial court's attention. Defendant's counsel elected for sound tactical considerations not to pursue an insanity defense or a straight Rule 3.210 motion.[6] Faced with an unsupported motion for the assistance of a psychiatrist, the trial judge was under no constitutional duty to grant Clark's request for a psychiatric expert to report confidentially to his counsel.
 
 
 23
 Clark's contentions are virtually identical to those of the petitioner in Bowden v. Kemp, 767 F.2d 761 (11th Cir.1985). Bowden also claimed that his constitutional rights were violated by the trial court's refusal to appoint a psychiatrist to examine him. Like Clark, Bowden failed to make any showing that his sanity was to be a significant issue at trial.[7] We affirmed the denial of Bowden's habeas petition, stating: "Where a defendant offers 'little more than undeveloped assertions that the requested assistance would beneficial, we find no deprivation of due process in the trial judge's decision.' " Id. at 765 (quoting Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985)). We follow that same reasoning here in rejecting petitioner's Ake claim. See also United States v. Rodriguez, 799 F.2d 649, 654-55 (11th Cir.1986); Cartwright v. Maynard, 802 F.2d 1203, 1209-14 (10th Cir.1986).
 
 
 24
 2. Refusal of Trial Judge to Recess Jury Deliberations
 
 
 25
 The jury began its deliberations at 2:30 p.m. on September 23, 1977. The jury continued to deliberate into the night until it reached a verdict at 2:17 a.m. The jurors never made any request to postpone their deliberations. Clark, nevertheless, moved on two occasions to have the jury retire for the evening. These motions were denied. Clark now argues that the trial court's refusal to order the jury to retire for the evening violated his constitutional rights to due process and equal protection.
 
 
 26
 In denying the defendant's motion, the trial judge expressed concern that it might be prejudicial to the defendant or the State to intrude upon the deliberations at that time. The judge noted that the jury could be at a critical point in their deliberations. The judge also commented that a note suggesting a break might be misconstrued by the jury as a subtle form of intimidation to arrive at a verdict more hastily than they normally would. Clark fails to demonstrate that the trial judge erred in his evaluation of the situation before him. There is no evidence to support Clark's assertion that the jury was unduly pressured by time constraints into rendering a verdict. We therefore cannot conclude that Clark was denied a fair trial on the basis of the length of time the jury deliberated.
 
 3. Denial of Cross-examination
 
 27
 At trial, the defense sought to cross-examine Ty Johnston concerning his juvenile record and his past treatment by a psychiatrist or psychologist. The trial court did not permit Clark to pursue this line of questioning. Clark now contends that these limitations on his cross-examination of Johnston violated his sixth amendment right of confrontation. We conclude that regardless of whether the trial judge correctly applied the state's evidentiary rules, there was no violation of the United States Constitution. See Smith v. Phillips, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); Shaw v. Boney, 695 F.2d 528, 530 (11th Cir.1983). Johnston's juvenile records were in the possession of the State of California. Petitioner conceded in his argument to this court that the trial judge lacked access to these records and could not force California to produce them. Clark also cannot demonstrate how permitting this cross-examination would have materially aided his defense.[8] Absent such a showing of prejudice, the petitioner is not entitled to habeas relief. See, e.g., Dickson v. Wainwright, 683 F.2d 348, 350 (11th Cir.1982).[9]
 
 4. Bill of Particulars
 
 28
 In an attempt to prepare for the sentencing phase, Clark filed a motion for a statement of particulars of the aggravating circumstances on which the State would rely. After a brief hearing, the court denied this motion. Petitioner now argues that without a bill of particulars, he had no notice of the acts and circumstances which he would have to defend during the sentencing phase. Clark contends that he was entitled to such notice under the due process clause.
 
 
 29
 It is well established under Florida law that a defendant has no right to advance notice of the aggravating circumstances on which the State will rely. Ruffin v. State, 397 So.2d 277, 282 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981); Menendez v. State, 368 So.2d 1278, 1282 n. 21 (Fla.1979). The Florida sentencing statute itself sufficiently particularized the aggravating circumstances in a capital case, listing eight specific factors. See Fla.Stat. Sec. 921.141 (1975). We conclude that the trial court's failure to require a bill of particulars did not violate Clark's constitutional rights. See, e.g., Spinkellink v. Wainwright, 578 F.2d 582, 609-10 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); Songer v. Wainwright, 571 F.Supp. 1384, 1401-02 (M.D.Fla.1983), aff'd, 733 F.2d 788 (11th Cir.1984), cert. denied, 469 U.S. 1133, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985); see also Johnson v. Thigpen, 623 F.Supp. 1121, 1136-38 (S.D.Miss.1985), aff'd, 806 F.2d 1243 (5th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987).
 
 5. Proportionality Review
 
 30
 Petitioner asserts that he was denied a proper "proportionality review" in violation of the eighth and fourteenth amendments. See Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Clark bases his claim on the trial court's refusal to appoint a psychiatric expert to assist in Clark's defense. Having ruled that petitioner had no right to an appointed psychiatric expert, we conclude that this proportionality argument also lacks merit.
 
 6. Ineffectiveness of Counsel
 
 31
 Clark contends that he was denied effective assistance of counsel in violation of the sixth and fourteenth amendments. He asserts that Susan Schaeffer, the attorney who directed his defense, failed to give reasonable professional assistance and thereby caused the trial court proceedings to produce an unjust result.[10] We disagree. Reviewing the various actions of defense counsel which Clark now claims to be deficient, we conclude that Clark received competent and able assistance and was in no way prejudiced by his counsel's performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[11]
 
 
 32
 Clark first complains that Schaeffer neglected to present testimony of psychologists or sociologists in support of her motion for change of venue and that she did not reassert this motion. Clark's argument, however, ignores the fact that Schaeffer introduced in evidence several newspaper articles discussing the case, called various media experts as witnesses, and presented two affidavits filed by local attorneys concerning this issue. Clark also ignores the strong measures taken by the trial judge to ensure a fair trial. The trial judge excluded any potential juror who had any knowledge of the case. Schaeffer later testified that she believed that the judge's liberal policy in excluding jurors had produced a jury that was as fair as Clark could expect in another venue. Based on her extensive efforts and strategic choice concerning the venue question, we cannot find fault with Schaeffer's course of action.
 
 
 33
 Clark also asserts that Schaeffer failed to consult with him and thereby prevented him from contributing to his own defense. Specifically, Clark argues that Schaeffer never consulted him about a possible insanity defense or taking the stand in his own defense. This argument is refuted by the record. Schaeffer and her co-counsel Martin Murry were in frequent contact with Clark. They visited him in jail on numerous occasions and spent countless hours discussing his life and background. Although Schaeffer never discussed a potential insanity defense with Clark, this was simply because she had no reason to believe such a defense was possible. Schaeffer's experience with Clark indicated that he was coherent and rational at all times. She investigated the story that he gave her and found it consistent with the facts as she knew them. Schaeffer also believed that any defense which involved Clark testifying at trial would inevitably lead to Clark convicting himself.
 
 
 34
 Clark also charges that his trial counsel failed to present witnesses who would testify as to Ty Johnston's culpability for the crime. It is claimed that two individuals who had been in holding cells with Johnston would have testified that Johnston admitted committing the murder. Schaeffer's testimony at the Rule 3.850 hearing, however, indicated that she investigated this lead. She found that these witnesses were "equivocating" and that their testimony was not very strong. After evaluating the effectiveness of these two witnesses, Schaeffer chose to forego their testimony in order to gain the right to rebuttal in the presentation of closing arguments.[12] "In reviewing ineffective assistance of counsel claims, we do not sit to second guess considered professional judgments with the benefit of 20/20 hindsight." Ford v. Strickland, 696 F.2d 804, 820 (11th Cir.) (en banc), cert. denied, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). This court will not reverse reasonable strategic judgments such as those made by trial counsel here. See, e.g., Washington v. Watkins, 655 F.2d 1346, 1355 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982); Easter v. Estelle, 609 F.2d 756, 759 (5th Cir.1980).
 
 
 35
 Finally, Clark contends that he received ineffective representation during the penalty phase. The only evidence Schaeffer presented was a stipulated statement which informed the jury that it was Dr. Henninger's opinion that Clark was insane at the time of another murder he had committed in California. Clark asserts that Schaeffer had available to testify Dr. Henninger, a noted California psychologist, and friends of Clark who would testify favorably about him. He claims that any reasonably effective counsel would have presented this evidence in order to give the jury some reason to extend mercy towards Clark.
 
 
 36
 There were a number of strong reasons for Schaeffer's decision not to present witnesses at the penalty phase. For example, calling Jean DuPree as a witness might have had disastrous effects. Not only did Schaeffer harbor doubts about the accuracy of DuPree's testimony, but counsel also was aware that the prosecution possessed a tape of a conversation between Clark and Johnston in which the pair conspired to kill DuPree's daughter. Schaeffer feared that the trial judge might allow the State to play these tapes if DuPree testified.
 
 
 37
 Schaeffer extensively investigated Clark's background. Although Schaeffer admitted that she incorrectly believed that she could present only statutory mitigating factors, her investigation went far beyond the statutory factors.[13] She spent three days in California interviewing potential defense witnesses, taking depositions, and speaking with Clark's doctor, prior defense counsel and friends. Schaeffer's investigation, however, uncovered little information to aid Clark's defense. Clark's friends in California were not aware that he had gone to prison the first time for killing a fourteen year-old boy. Once the true story of this previous killing became public, Clark's friends were no longer well disposed towards him. More importantly, Schaeffer feared that any evidence concerning Clark's earlier murder would have a devastating effect on the jury. The California appellate opinion termed this murder one of the most brutal and aggravated homicides ever committed. Schaeffer thus decided to agree to the stipulation concerning Dr. Henninger and did not call these other California-based witnesses.[14]
 
 
 38
 The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir.1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). "After a sufficient investigation, however, 'counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.' " Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, --- U.S. ----, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, sub nom. 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, "[c]ounsel has no absolute duty to present mitigating character evidence." Id. (quoting Mitchell, 762 F.2d at 889). Schaeffer conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, Schaeffer's decision is "accorded a strong presumption of correctness which is 'virtually unchallengeable.' " Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir.1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives that she faced, Schaeffer's handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried Clark's case.
 
 7. The Hitchcock Claim
 
 39
 In his supplemental brief, Clark argues that during the penalty phase, the trial court impermissibly limited the consideration of nonstatutory mitigating circumstances. See generally Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (sentencer cannot be precluded from considering as a mitigating factor "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."). Clark was sentenced before the Florida Supreme Court's decision in Songer v. State, 365 So.2d 696 (Fla.1978), at a time when many Florida judges believed that Florida law prohibited consideration of nonstatutory mitigating circumstances.[15] In Hitchcock v. Dugger, --- U.S. ----, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), a unanimous Supreme Court overturned a Florida death sentence on the ground that the trial court had improperly restricted consideration of evidence of certain nonstatutory mitigating factors. Although the defendant in Hitchcock was allowed to introduce evidence concerning matters outside Florida's statutory list of mitigating circumstances, the Court held that the prosecutor's arguments and the judge's instructions had prevented the jury from considering it. Id. at 1824. The Court stated:
 
 
 40
 We think it could not be clearer that the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances, and that the proceedings therefore did not comport with the requirements of ... Lockett v. Ohio.
 
 
 41
 Id.
 
 
 42
 The instructions given the jury in this case are virtually identical to those in Hitchcock. At the beginning of the penalty phase, the judge told the jury that it would be "instructed on the factors in aggravation and mitigation that [it] may consider." Before excusing the jury for deliberation, the judge instructed: "[t]he mitigating circumstances you may consider if established by the evidence, are these: [listing the statutory mitigating circumstances]." The prosecutor also suggested that circumstances outside the statutory list could not be considered. During voir dire, the prosecutor stressed that "there are certain mitigating circumstances that the defense may present." During his closing argument in the penalty phase, the prosecutor stated: "Now, let's see if those mitigating circumstances outweigh those aggravating circumstances. Number one, [listing the statutory mitigating circumstances]."
 
 
 43
 While it was improper for the prosecutor and trial judge to tell the jury that it could consider only statutory mitigating circumstances, we conclude that the error could not have affected Clark's sentence and thus was harmless beyond a reasonable doubt. In Hitchcock, the defendant had introduced evidence supporting the existence of several nonstatutory mitigating circumstances. 107 S.Ct. at 1823-24. The Supreme Court concluded that this evidence had not been considered and that the defendant's death sentence was therefore invalid. Id. at 1824. Here, however, there simply were no nonstatutory mitigating circumstances to consider. Clark did not introduce any evidence that would support the existence of a nonstatutory mitigating circumstance.[16] As explained supra, Clark's counsel, after her investigation, made a tactical decision that any testimony at the penalty phase could only prove harmful. Thus, Clark failed to introduce any mitigating evidence whatever.[17] Clark nonetheless argues that the trial court's instructions prevented the jury from considering mercy, its doubts about Clark's guilt and Clark's acts of kindness toward his co-defendant. Even if these were relevant mitigating factors, a doubtful proposition, there is no indication that Clark attempted to raise them during the penalty phase. Having failed to produce evidence of any nonstatutory mitigating factors, Clark can hardly complain that the trial court restricted the jury's ability to consider them. We therefore conclude that any Hitchcock error was harmless under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 D. Conclusion
 
 44
 Because there was no showing that sanity at the time of the offense would be a significant factor at trial, the trial court correctly denied Clark's motion for a to demonstrate any error by the trial court in its supervision of the jury deliberations or any other aspect of the trial. The record further reveals that Clark received effective and competent representation from his trial counsel. The judgment of the district court is, accordingly,
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 Clark's other contentions were as follows:
 (1) that the prosecutor and the trial judge misinformed the jury regarding its role in sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985);
 (2) that the trial court improperly restricted the defense's cross-examination of Ty Johnston regarding conversations he had with his lawyer;
 (3) that trial counsel's mishandling of the State's attempt to obtain a voice exemplar deprived Clark of effective assistance of counsel; and
 (4) that the state urged victim impact evidence as a basis for a sentence of death in violation of Booth v. Maryland, --- U.S. ----, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
 Clark did not present these arguments to the district court, and we decline to address them.
 
 
 [2]
 Former Rule 3.210, Fla.R.Crim.P., has since been replaced by Fla.R.Crim.P. 3.216 which states:
 (a) When in any criminal case counsel for a defendant adjudged to be indigent or partially indigent, whether public defender or court appointed, shall have reason to believe that the defendant may be incompetent to stand trial or that he may have been insane at the time of the offense, he may so inform the court who shall appoint one expert to examine the defendant in order to assist his attorney in the preparation of his defense. Such expert shall report only to the attorney for defendant and matters related to the expert shall be deemed to fall under the lawyer-client privilege.
 
 
 [3]
 Petitioner argues that he was prejudiced by the court's refusal to appoint an expert and points to the 1985 examination of Clark by Dr. Henry Krop, Director of Community Behavioral Services in Gainesville, Florida. Dr. Krop concluded that Clark may have been under emotional distress at the time of the offense
 
 
 [4]
 As the trial judge stated at the petitioner's second Rule 3.850 hearing, "As I understand it, [defendant's counsel] simply wanted somebody to look him over without really knowing why."
 
 
 [5]
 Ake's bizarre behavior at arraignment made clear to the trial judge that Ake's sanity would be a significant issue at his trial. Ake, 470 U.S. at 86, 105 S.Ct. at 1098
 
 
 [6]
 Clark's trial counsel, Susan Schaeffer, later testified:
 It was my candid opinion, having talked with Mr. Clark, that he was quite competent. In fact, I found him to be, and still do, to be an intelligent man. He was, in my candid opinion, having dealt with numerous defendants, some of whom, I believe, to be not competent, I believed he was competent to stand trial. I did not believe, after discussing this with him, there was any issue as to his competency at the time of the offense at all, and I felt that to pursue this in a fashion that would allow the State to know the facts of the case as related to me by Mr. Clark, which is the only way that the evaluation could have been done, would have been detrimental to this case.
 
 
 [7]
 Ake requires a defendant to make some showing that sanity at the time of the offense will be a significant factor at trial in order to trigger the state's responsibility to afford him the assistance of a psychiatrist. The record here discloses no such showing
 Bowden, 767 F.2d at 764.
 
 
 [8]
 It is difficult to understand how Johnston's psychiatrict treatment was relevant. In fact, Clark offers no information as to what Johnston's past psychiatric evaluations showed. Johnston's motive, interest and bias in testifying against Clark were extensively examined at trial, and further cross-examination along those lines would have been cumulative
 
 
 [9]
 An incorrect state evidentiary ruling only justifies habeas relief when a defendant is denied "fundamental fairness." Dickson v. Wainwright, 683 F.2d at 350. An incorrect evidentiary ruling does not violate the established standard of fundamental fairness, however, unless the error is "material in the sense of a crucial, critical, highly significant factor." Shaw v. Boney, 695 F.2d at 530 (quoting Hills v. Henderson, 529 F.2d 397, 401 (5th Cir.), cert. denied, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976)). Reviewing the trial record as a whole, we conclude that denying Clark the opportunity to pursue this line of questioning was not a "crucial, critical, highly significant factor."
 
 
 [10]
 In April 1977, Susan Schaeffer, now a Florida Circuit Court Judge, was employed as an Assistant Public Defender. In that capacity, she handled only felony cases and had represented defendants in a number of capital cases prior to this one. Schaeffer was assisted by Martin Murry, another lawyer on the public defender's staff. She also utilized the services of investigators on that staff
 
 
 [11]
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable
 Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064.
 
 
 [12]
 Under Fla.R.Crim.P. 3.250, a defendant who offers no testimony in his own behalf, except his own, may close the final arguments to the jury
 
 
 [13]
 At the time of Clark's sentencing Fla.Stat. Sec. 921.141(6) provided that the mitigating circumstances "shall be the following:"
 (a) The defendant has no significant history of prior criminal activity.
 (b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
 (c) The victim was a participant in the defendant's conduct or consented to the act.
 (d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
 (e) The defendant acted under extreme duress or under the substantial domination of another person.
 (f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
 (g) The age of the defendant at the time of the crime.
 
 
 [14]
 The State also agreed that it would present no other evidence during the penalty phase
 
 
 [15]
 The confusion in Florida law concerning the consideration of mitigating circumstances outside the statutory list has been well documented, and need not be discussed here. See, e.g., Hitchcock v. Wainwright, 770 F.2d 1514, 1516 (11th Cir.1985) (en banc), rev'd sub nom. --- U.S. ----, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)
 
 
 [16]
 Clark does not contend that the court prevented him from introducing any such evidence
 
 
 [17]
 It appears that the only evidence Clark introduced during the penalty phase was the stipulation to the effect that Dr. Henninger believed Clark was insane at the time of an earlier murder Clark had committed in California. This evidence simply served to rebut an aggravating factor being asserted by the State. See Skipper v. South Carolina, 476 U.S. 1, 9, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (1986) (Powell, J., concurring)