Frank SMITH, Petitioner,

v.

Richard L. DUGGER, et al.,
Respondents.

No. TCA 90–40035–WS.

United States District Court,
N.D. Florida,
Tallahassee Division.

June 8, 1990.

Billy H. Nolas, Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Carolyn Snurkowski, Asst. Atty. Gen., Tallahassee, Fla., for respondents.

## ORDER

STAFFORD, Chief Judge.

This cause is before the court upon Frank Smith's second petition for writ of habeas corpus (document 1). Due to the important constitutional matters here presented, I feel obliged to set forth in detail my analysis for the benefit of those charged with the inevitable review of my decision in the federal appellate process.

## I. BACKGROUND

### A. Facts

The facts leading to Smith's conviction are well documented in the voluminous record of this brutal murder case. Briefly, on the evening of December 12, 1978, Smith, along with two accomplices, Johnny Copeland and Victor Hall, robbed a convenience store in Wakulla County, Florida. They then abducted the store clerk, Sheila Porter, and took her to a motel where they each committed sexual battery upon her.

Victor Hall testified that the three men later drove Ms. Porter to a wooded area. There, Hall waited in the car while Smith and Copeland took her into the woods. Hall testified that he heard three gunshots, after which Copeland and Smith returned to the car alone. Sheila Porter's body was found two days later with three bullet wounds in the back of her head.

### B. Procedural History

Found guilty of robbery, kidnapping, sexual battery, and first-degree murder, Smith was sentenced to death in accordance with the jury's recommendation. The sentencing judge found and weighed the following six aggravating factors—

(1) That the defendant had two prior convictions for violent felonies (robberies).

(2) That the murder was committed in the course of an enumerated felony (kidnapping).

(3) That the murder was committed to avoid arrest.

(4) That the murder was committed for pecuniary gain.

(5) That the murder was heinous, atrocious and cruel.

(6) That the murder was cold, calculated and premeditated—

against only one mitigating factor—that Smith was nineteen (19) years of age when the crime was committed.

Smith appealed his conviction and death sentence to the Florida Supreme Court. Finding no reversible error, the state supreme court affirmed Smith's convictions and death sentence, and certiorari review was subsequently denied. *Smith v. State,* 424 So.2d 726 (Fla.1982), *cert. denied,* 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983).

The Governor of Florida denied Smith clemency and signed a warrant scheduling his execution. Smith then filed motions in the state trial court seeking a stay of execution and post-conviction relief pursuant to Fla.R.Crim.P. 3.850. The trial court refused to grant a stay and denied Smith's 3.850 motion. The Florida Supreme Court affirmed the denial of post-conviction relief

and further denied Smith's original petition for a writ of habeas corpus raising the single issue of ineffective assistance of appellate counsel. *Smith v. State*, 457 So.2d 1380 (Fla.1984).

On October 13, 1984, Smith filed a petition for writ of habeas corpus in this court. Having stayed Smith's execution to permit time for consideration of his petition, this court held that the first ten of Smith's eighteen claims were procedurally barred. The remaining eight claims were denied on the merits without further evidentiary proceedings.

Raising six issues, Smith appealed to the Eleventh Circuit Court of Appeals. The Eleventh Circuit affirmed this court's decision after finding no violation of Smith's constitutional rights. *Smith v. Dugger*, 840 F.2d 787 (11th Cir.1988). Smith thereafter filed a petition for rehearing in which he raised, *inter alia*, a claim under *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). *Hitchcock* was decided by the United States Supreme Court after this court's decision and while Smith's case was on appeal in the Eleventh Circuit. Rehearing was subsequently denied but without prejudice to Smith's presenting his unexhausted *Hitchcock* claim to the Florida state courts. *Smith v. Dugger*, 888 F.2d 94 (11th Cir.1989). The Eleventh Circuit made clear that Smith's unexhausted *Hitchcock* claim was not foreclosed from federal review in a subsequent action, after exhaustion. Smith filed a timely petition for certiorari which is currently pending in the U.S. Supreme Court.

On July 31, 1989, Smith filed a second Rule 3.850 motion in state trial court. He raised twelve (12) claims, including a claim of error under *Hitchcock*. All claims but one were found to be procedurally barred. The one exception—Smith's *Hitchcock* claim—was denied on the merits. On appeal, the Florida Supreme Court held that, while the trial court's instructions to the jury indeed violated *Hitchcock*, such error was harmless beyond a reasonable doubt. All other claims were found to be procedurally barred. *Smith v. State*, 556 So.2d 1096 (Fla.1990).

While Smith's *Hitchcock* claim was still being considered in the Florida courts, the Governor of Florida issued a second death warrant, setting Smith's execution for 7:00 a.m. on February 9, 1990. After the Florida Supreme Court denied all relief on February 8, 1990, but before his scheduled execution the following morning, Smith filed with this court a motion for stay of execution along with his second petition for writ of habeas corpus. With but a few short hours before Smith's scheduled early morning execution, and needing time to give proper consideration to both Smith's 176–page petition for writ of habeas corpus as well as the state's response, the court granted Smith's request for a stay. A complete, orderly record has now been compiled in this court, and Smith's claims are ripe for review.

## II. THE HITCHCOCK CLAIM

Relying on *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), petitioner first contends that the jury and the judge in the state trial court were unconstitutionally precluded from considering—and defense counsel from presenting—mitigating circumstances not enumerated in the Florida death penalty statute. Fla.Stat. § 921.141. In *Lockett*, the Supreme Court concluded that the eighth and fourteenth amendments require a sentencer to consider all relevant mitigating evidence in capital cases. Despite *Lockett*, the advisory jury in *Hitchcock* was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances. The Supreme Court found that, in the absence of a showing that the error was harmless, such exclusion of mitigating evidence rendered Hitchcock's death sentence invalid. The Court reiterated its holding in *Lockett* that the eighth amendment, applicable to the states through the fourteenth amendment, requires that a capital sentencer not be precluded from considering, as a mitigating factor, *any* aspect of a defendant's charac-

ter or record that the defendant proffers as a basis for a sentence less than death.

In this case, the state trial judge gave virtually the same instruction as that given in *Hitchcock*. At the conclusion of the penalty phase, the trial judge instructed the jury: "The mitigating circumstances which you may consider, if established by the evidence, are these: [listing the seven statutory mitigating circumstances enumerated in the Florida death penalty statute]." In *Hitchcock*, the trial judge instructed: "The mitigating circumstances which you may consider shall be the following: [listing the same seven statutory mitigating circumstances]." As in *Hitchcock*, the jury in this case was directed to consider only statutory factors in mitigation. As in *Hitchcock*, then, the jury instruction given in this case violated petitioner's eighth amendment right to "present any and all relevant mitigating evidence that is available." *Hitchcock*, 481 U.S. at 399, 107 S.Ct. at 1824, 95 L.Ed.2d at 353 (quoting *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)).

While conceding that the trial court's instruction was erroneous, the state respondent here argues that both the trial court and the Florida Supreme Court were correct in concluding that the error was harmless. The Eleventh Circuit has said that a *Hitchcock* violation is subject to harmless error analysis. *Demps v. Dugger*, 874 F.2d 1385, 1389 n. 12 (11th Cir.1989) (citing cases), *cert. denied*, —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990). Such analysis is governed by the strict "harmless beyond a reasonable doubt" standard enunciated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under *Chapman*, the court must *presume* prejudice unless and until the state proves *beyond a reasonable doubt* that the erroneous sentencing instruction did not contribute to the jury's sentencing recommendation. *See Brown v. Dugger*, 831 F.2d 1547 (11th Cir.1987) (discussing *Chapman* standard where constitutionally-proscribed evidence was admitted at trial). If there remains any possibility that the jury's sentencing decision was affected by the erroneous jury instruction, and if the state can-

not refute that possibility, the error cannot be deemed harmless.

■ While state court factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(d), harmlessness of a constitutionally erroneous jury instruction is not an issue of fact entitled to such a presumption. It is, instead, a mixed question of law and fact meriting independent consideration by a federal habeas court. This court, therefore, cannot simply defer to the state courts' findings of harmlessness. *See, e.g., Delap v. Dugger*, 890 F.2d 285 (11th Cir.1989) (finding *Hitchcock* error not harmless despite state courts' findings to the contrary).

Mindful that there are no precise guidelines for determining harmlessness in a *Hitchcock* context, *see Demps*, 874 F.2d at 1385 (all three judges on the panel wrote separate opinions about how to analyze the *Hitchcock* claim), the court finds instructive, a review of Eleventh Circuit cases involving *Hitchcock* claims.

In *Demps*, the petitioner was sentenced to death for the killing of a fellow prison inmate. Demps challenged his sentence on *Hitchcock* grounds, arguing that his jury was impermissibly precluded from considering nonstatutory mitigating circumstances. The Eleventh Circuit panel agreed, the trial judge having given an instruction virtually identical to the one erroneously given in *Hitchcock*.

Judge Fay, writing the lead opinion, examined each of the four types of evidence which Demps alleged would have influenced the jury to recommend life, determined that none of the evidence excluded from the jury's consideration would have affected its sentencing recommendation, and thus concluded that any error which may have occurred was harmless. Judge Fay emphasized that, in evaluating whether a *Hitchcock* error is harmless, a court must—after an in-depth review of the entire record—"determine beyond a reasonable doubt that the proposed mitigating evidence regarding the defendant's character would not have influenced the jury to

recommend a life sentence." *Demps*, 874 F.2d at 1390.

Judge Clark agreed with Judge Fay that Demps was not entitled to a new sentencing hearing as a result of the erroneous *Hitchcock* instruction. He was unable to agree with Judge Fay, however, that a harmless error analysis was appropriate. Judge Clark opined that, "[w]here there is no nonstatutory mitigating evidence there can be no *Hitchcock* error and harmlessness need not be considered." *Id.* at 1396. Because he concluded that Demps failed to present even arguably credible evidence of nonstatutory mitigating circumstances, Judge Clark did not believe that the court needed to engage in harmless error analysis. He did suggest, however, that a case should be returned to the state court for resentencing if any credible nonstatutory evidence exists, whether such evidence was heard but excluded from consideration or whether it was not even offered because Florida law at the time taught that such evidence was not admissible. *Id.* at 1395.

Largely because he felt the record contained no factual findings on Demps's claims of mitigating evidence, Judge Johnson dissented from the majority's finding that Demps was not entitled to a resentencing hearing under *Hitchcock*. Judge Johnson believed that the case should be remanded to the district court for findings as to the truthfulness of Demps's claims. If the district court were to find that Demps had no true mitigating evidence to offer, Judge Johnson would concede that any error in the jury instructions was harmless. If, on the other hand, the district court were to find any of Demps's claims of mitigating evidence to be true, then Judge Johnson would conclude that excluding the evidence from the jury's consideration would have constituted reversible error.

Citing *Knight v. Dugger*, 863 F.2d 705 (11th Cir.1988), Judge Johnson stressed that there is a narrow range of situations in which *Hitchcock* error may be harmless. In *Knight*, respondent argued that any *Hitchcock* error was harmless because "so many aggravating factors were found (four) that no amount of non-statutory miti-

gating evidence could change the result in this case." 863 F.2d at 710. In rejecting the state's reasoning, the Eleventh Circuit stated:

> No authority has been furnished for this proposition and it seems doubtful that any exists. The State's theory, in practice, would do away with the requirement of an individualized sentencing determination in cases where there are many aggravating circumstances. It is this requirement, of course, that is at the heart of *Lockett* and its progeny....
>
> While we are not prepared to definitively state what might constitute harmless error in the *Lockett* context, it is clear that harmless error cannot be made out simply because multiple aggravating circumstances exist in a given case.

*Id.* To paraphrase Judge Johnson, the *Knight* decision leaves little room for the application of harmless error analysis except in two limited situations: (1) where the defense produces no nonstatutory mitigating evidence, and (2) where the nonstatutory mitigating evidence presented is so insignificant that it would not have altered the jury's decision. *See Demps*, 874 at 1393 (Judge Johnson, dissenting); *Jones v. Dugger*, 867 F.2d 1277 (11th Cir.1989).

The Eleventh Circuit has found *Hitchcock* error to be harmless only three times. *See Demps*, 874 F.2d at 1385 (error harmless where petitioner failed to present any credible evidence of mitigating circumstances); *Tafero v. Dugger*, 873 F.2d 249 (11th Cir.1989) (error harmless where defense counsel purposely presented no mitigating evidence for strategic reasons), *cert. denied*, —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 962; *Clark v. Dugger*, 834 F.2d 1561, 1569–70 (11th Cir.1987) (error harmless where "there simply were no nonstatutory mitigating circumstances to consider"), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988). In contrast, the court has many times granted relief on *Hitchcock/Lockett* grounds. *See, e.g., Delap v. Dugger*, 890 F.2d 285 (11th Cir.1989) (error not harmless where there was significant psychological evidence which the jury, if it followed the court's erroneous *Hitchcock* instruction, would have considered

only if it rose to the level of a statutory mitigating factor—i.e., only if the jury found that Delap committed the crime "under the influence of *extreme* mental or emotional disturbance"); *Jones v. Dugger,* 867 F.2d 1277, 1280 (11th Cir.1989) (error not harmless where there was mitigating evidence in the record that petitioner was a model prisoner and "a very nice person [who] got along well with people [and] was never no trouble"); *Knight v. Dugger,* 863 F.2d 705 (11th Cir.1988) (error not harmless where there was mitigating evidence in the record about petitioner's mental state and his troubled family background, and the state argued only that the *Hitchcock/Lockett* error was harmless because there were multiple aggravating circumstances); *Ruffin v. Dugger,* 848 F.2d 1512 (11th Cir.1988) (granting relief on *Hitchcock/Lockett* claim, without discussion of harmlessness, where there was evidence in the record of petitioner's mental state, his lack of an adult criminal record, and the alleged domination of petitioner by his accomplice), *cert. denied,* 488 U.S. 1044, 109 S.Ct. 872, 102 L.Ed.2d 995 (1989); *Magill v. Dugger,* 824 F.2d 879 (11th Cir.1987) (error not harmless where there was evidence in the record that petitioner felt remorse for his actions); *Hargrave v. Dugger,* 832 F.2d 1528 (11th Cir.1987) (granting relief on *Hitchcock/Lockett* claim, without discussion of harmlessness, where there was mitigating evidence in the record of petitioner's steady employment, below-average intelligence, and history of drug abuse), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989).

A synthesis of the above-cited cases leads this court to conclude that, in reviewing a *Hitchcock* claim, a federal district court must first determine whether there was any credible nonstatutory mitigating evidence that the jury either did hear or could have heard had the teachings of *Hitchcock* and its progeny been known at the time. If, after reviewing the entire record, the court concludes that petitioner has failed to produce or proffer any credible nonstatutory mitigating evidence, then the court must find that the *Hitchcock* error, if any, was harmless. If, as here,

petitioner produces *substantial* mitigating evidence, the federal district court will likely find the exclusion of such evidence to be harmful error, because the presumption of prejudice will be very difficult for the state to rebut. It is only when petitioner produces some, but not substantial, mitigating evidence that the district court's role is unclear. Indeed, the Eleventh Circuit has more than once alluded to conflicting viewpoints about the role of the habeas court in such a situation. *See Tafero,* 873 F.2d at 252 n. 5; *Delap,* 890 F.2d at 306 n. 23.

In this case, as mentioned previously, the state urges the court to deny all relief on the basis of harmless error. The thrust of the state's argument, however, is difficult to discern. On the one hand, the state suggests that defense counsel did, in fact, argue to the jury several alleged mitigating factors which did not fit clearly within the confines of the enumerated statutory factors. The state notes, for example, that defense counsel included in his arguments to the jury that (1) the defendant did not personally kill the victim, (2) the defendant was fifteen years old when he committed his prior robberies, (3) the defendant had been drinking gin and smoking marijuana the evening of the crime, and (4) the defendant was influenced by the dominant personality of his accomplice. The state writes:

> Clearly from the tone of the closing arguments presented, [defense counsel] *intended* those jurors to consider the minuteness of evidence in relationship to those mitigating factors. He was *desirous* that the jury and judge find *statutory mitigation* but he made it perfectly clear that the slightest evidence in "mitigation" be considered.

Document 7, p. 35 (emphasis in original).

If the state is suggesting that the *Hitchcock* error is harmless because defense counsel could and did, both present and argue, nonstatutory mitigating factors, the suggestion must be rejected. The Eleventh Circuit has made it abundantly clear that the actual introduction of nonstatutory mitigating evidence is meaningless if the

jury is instructed not to consider such evidence. *Delap*, 890 F.2d at 304 (citing cases). Furthermore, the error is not rendered harmless just because the judge himself hears and considers nonstatutory mitigation. *Jones*, 867 F.2d at 1280 ("[A] trial court cannot, by specifically considering nonstatutory mitigating evidence, cleanse a jury recommendation which is tainted by *Lockett* error"); *Magill v. Dugger*, 824 F.2d 879, 894 (11th Cir.1987). It follows, then, that the error does not become harmless just because the state trial judge later states—as he did in this case—that "[e]ven if the court had been presented all of this alleged mitigating evidence now being offered by the defendant, it would have in no way altered my decision to impose the death penalty." *See* document 7, p. 35.

The state also suggests that this case is similar to *Clark* and *Tafero*, both of which resulted in findings of harmlessness because there were no mitigating factors. If, by drawing an analogy to *Clark* and *Tafero*, the state is suggesting that there simply is no nonstatutory mitigating evidence in this case, the record belies such suggestion. As petitioner points out, there was evidence in the record from which the jury could have concluded that: (1) Smith was not the triggerman who killed the victim; (2) Smith tried to dissuade his accomplice, Johnny Copeland, from killing the girl; (3) Smith was guilty under the felony murder doctrine; (4) a "cooperating" accomplice, Victor Hall, was expecting to receive a life sentence, with eligibility for parole after eight or ten years, even though he too was guilty of the same three underlying felonies; and (5) Smith may have been intoxicated at the time of the offense.

Petitioner also indicates that there was substantial "nonrecord" nonstatutory mitigating evidence which could have been presented had the teachings of *Hitchcock* been available at the time of Smith's trial. For example, petitioner has filed affidavits, letters, and reports which indicate, *inter alia*, that defendant: (1) had a long-term history of alcohol and substance abuse; (2) suffered from grand mal epilepsy; (3) was, for all practical purposes, abandoned by his mother and abused by his grandmother; (4)

had a history of childhood deprivation including malnourishment, lack of adequate parenting, inadequate clothing and shelter, and lack of medication for his medical needs, especially his epilepsy; (5) was mistakenly incarcerated at an adult institution when he was convicted of robbery at age 15; (6) was known to be non-violent, meek and soft-spoken; and (7) was diagnosed as having diffuse and long-standing brain damage, consistent with his history of alcohol abuse and epilepsy disorder.

While conceding that some nonstatutory mitigating evidence was both presented and argued to the jury, the state neither addresses this alleged record mitigating evidence nor explains why this court might find such evidence to be insubstantial or incredible. As to the proffered "nonrecord" nonstatutory mitigating evidence, the state neither contests the veracity of the proffered evidence nor offers any explanation—other than conclusory comments about the enormity of Smith's crime—about why the evidence would not have influenced the jury to recommend a life sentence.

Instead, the state directs the court's attention to the fact that a *Lockett* issue was the basis for a previous unsuccessful attack on trial counsel's representation under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The state writes: "Necessarily in finding [defense counsel] made tactical decisions in the presentation of mitigating evidence at the penalty phase of the 1979 trial, and finding no prejudice under *Strickland v. Washington*, the harmless error analysis regarding *Hitchcock* is made much simpler." Document 7, p. 30. Presumably, the state wants the court to ignore the proffered evidence because the court previously found, in a *Strickland* setting, that counsel chose not to present mitigating evidence for strategic reasons. Such finding allowed this court, as well as the Eleventh Circuit, to conclude (without addressing the prejudice prong of the *Strickland* test) that petitioner's *Strickland* claim was without merit.

Mindful that claims under *Strickland* and *Hitchcock* are separate and distinct, the court notes that defense counsel's tactical decisions were made in the context of the law as it then existed. The standard jury instruction promulgated under such law informed jurors that "the mitigating circumstances which you may consider, if established by the evidence, are these [listing the seven statutory mitigating factors]." The record makes it evident that counsel developed both his strategies as well as his arguments under the constraints of that jury instruction. To do so was reasonable at the time. Only later did the Supreme Court decide that it was error for the trial court to give the constraining instruction. *Hitchcock*, 481 U.S. at 393, 107 S.Ct. at 1821, 95 L.Ed.2d at 347. That later decision did not make counsel's prior performance ineffective under *Strickland*. It did, however, make it necessary for this court to now determine whether the erroneous instruction affected the jury's decision as to penalty. To make that determination, the court must look at the various types of nonstatutory mitigating factors which either were presented, or could have been presented, to the jury. Because of the change in the law, this court cannot merely ignore the evidence on the ground that defense counsel was previously found to have made a tactical decision not to present certain kinds of evidence during the penalty phase of the trial.

Perhaps the court would think differently if there were reason to believe that counsel's strategies were not affected by the erroneous instruction. In *Clark*, 834 F.2d at 1566–70, for example, petitioner's ineffective assistance of counsel claim was denied because the court found that counsel—after thorough investigation—made a tactical decision to introduce no testimony during the penalty phase of Clark's trial. That same tactical decision was used to support the court's conclusion that the *Hitchcock* error was harmless. The court wrote:

> Here, however, there simply were no nonstatutory mitigating circumstances to consider. Clark did not introduce any evidence that would support the existence of a nonstatutory mitigating circumstance. As explained *supra*, Clark's counsel, after her investigation, made a tactical decision that any testimony at the penalty phase could only prove harmful. Thus, Clark failed to introduce any mitigating evidence whatever.... Having failed to produce evidence of any nonstatutory mitigating factors, Clark can hardly complain that the trial court restricted the jury's ability to consider them. We therefore conclude that any *Hitchcock* error was harmless.

834 F.2d at 1569–70. Importantly, there was no evidence that counsel's strategies would have been different had she defended the case post-*Hitchcock*. At the time of trial, and without the benefit of *Hitchcock*, she decided that there simply was no credible evidence of mitigating factors. Two years later, and despite the *Hitchcock* decision, there was still no credible evidence of mitigating factors. In such a case, counsel's tactical decision not to present mitigating evidence supports the court's denial of both a *Strickland* and a *Hitchcock* claim. Here, however, the situation is different.

In Smith's case, the record indicates that trial counsel, now a state circuit judge, felt constrained by the court's erroneous instruction. In fact, as the state apparently concedes, he tried to stretch the statutory mitigating factors to permit consideration of what were most probably nonstatutory factors. In addition, he has filed an affidavit describing how his strategies were limited by the instruction which he knew would be given to the jury. Perhaps most significantly, unlike in *Clark*, there *was* nonstatutory mitigating evidence in this case which either was presented or could have been presented by counsel and considered by the jury had the erroneous jury instruction not been given. In sum, the record before me suggests that counsel's strategy would have been different had the case been tried post-*Hitchcock*. Under such circumstances, this court cannot accept the state's premise that the tactical decision which supported the denial of petitioner's ineffective assistance of coun-

sel claim should, *ipso facto*, be used to deny petitioner's *Hitchcock* claim.

Because the State of Florida has placed great importance upon the advisory jury in the Florida sentencing scheme, this federal court must be especially cautious when speculating about the effect of a constitutional error on that state advisory jury. Indeed, as explained earlier, this court is required to *presume* prejudice unless and until the state proves *beyond a reasonable doubt* that the erroneous sentencing instruction did not contribute to the jury's sentencing recommendation.

The brutal, senseless murder of Sheila Porter was a horrible crime and completely justified the finding of many aggravating factors. Yet, under the law binding upon this court, the State of Florida is required to do more than point this court to the enormity of the crime in order to defeat petitioner's claim for relief. *Knight*, 863 F.2d at 710 (relief granted where the state's only argument was that there were multiple aggravating circumstances justifying the imposition of the death penalty). Here, the state has done little else. My duty, then, is clear. Having determined that (a) substantial nonstatutory mitigating evidence exists in this case, (b) the state has failed to prove the harmlessness of the erroneous instruction which prevented the introduction and/or consideration of such evidence by the state court jury, and (c) this court should not substitute its judgment for the considered judgment of a Florida jury properly instructed on sentencing under existing constitutional law, this court must GRANT conditional relief on the *Hitchcock* claim of petitioner Frank Smith.

### III.  REQUEST FOR EVIDENTIARY HEARING

■ The state trial court did not hold an evidentiary hearing to determine the harmfulness of the *Hitchcock* error in Smith's case. Had the state in any manner contested the veracity of the proffered nonstatutory mitigating evidence, or had the record been less clear about the constraining effect of the erroneous instruction on

the tactics of defense counsel, this court might be obliged to hold such a hearing. As the record stands, however, the *Hitchcock* issue is clearly focused for this court and can be resolved without an evidentiary hearing here. Accordingly, petitioner's request for an evidentiary hearing before this court is DENIED.

### IV.  OTHER CLAIMS

■ Smith raises five additional claims in his petition for writ of habeas corpus. Of these five claims, four (claims III—VI) were raised before the trial court in a motion for post-conviction relief. The trial court denied Smith's motion, finding that each of the four claims was procedurally barred. The Florida Supreme Court affirmed the trial court's decision, agreeing that the four claims were procedurally barred. *Smith v. State*, 556 So.2d 1096 (Fla.1990). Because the state courts clearly relied on procedural bar as an independent state basis for disposition of these four claims, there can be no federal habeas review unless Smith can show "cause" for the default and "prejudice attributable thereto." *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Because the court concludes that Smith has not shown adequate "cause" for his default, Claims III through VI of Smith's petition shall not be addressed here.

■ The remaining claim in Smith's petition—that Smith was denied his right to a full, fair, and independent determination of his second motion for post-conviction relief—fails to raise an issue of federal law. Smith basically complains that the trial judge signed an order prepared by the state. While others might question the propriety of such action, federal law clearly does not require that a judge personally prepare his own orders. Review of the record indicates that a fair hearing was held (albeit not an evidentiary hearing), and there is nothing to indicate that the order, by whomever prepared, does not reflect the

trial judge's ruling. Absent any error under federal law, this court will not question the procedures used by the state trial court. Finding no such error, the court concludes that Smith is not entitled to relief on Claim II of his petition for habeas corpus, and the same is DENIED.

## V. CONCLUSION

Based upon the foregoing analysis, the court concludes that petitioner has met his burden of establishing that an erroneous jury instruction given during the course of his sentencing proceeding unconstitutionally precluded presentation and consideration of mitigating circumstances not enumerated in the Florida death penalty statute. The state has not proven beyond a reasonable doubt that the giving of this erroneous instruction to the sentencing jury was harmless. Accordingly, it is ORDERED:

The petition for writ of habeas corpus is hereby GRANTED unless the state, within a reasonable period of time, either resentences Smith in a proceeding that comports with *Lockett/Hitchcock* or vacates the death sentence and imposes a lesser sentence consistent with law. All other relief requested by petitioner Smith is hereby DENIED.

DONE AND ORDERED.