516 So.2d 256 (1987)
John Patrick MASTERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 68814.
Supreme Court of Florida.
December 10, 1987.
Harold Mendelow, Sp. Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Debora J. Turner, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
This case is before us on direct appeal from the trial court's imposition of a death sentence after a jury recommendation of life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Masterson's first-degree murder conviction but vacate the sentence of death and, instead, direct imposition of a sentence of life imprisonment without possibility of parole for twenty-five years in accordance with the jury's recommendation. We also affirm his convictions and sentences for second-degree murder and armed robbery.
At approximately 2:00 a.m. on June 27, 1982, Joseph Parisi (a/k/a "Miami Joe"), a drug dealer, and his girlfriend, Patricia Savino, were found dead in their apartment by Mr. Parisi's son who told police that between 9:00 and 9:30 p.m. on June 26, 1982, a tall blond man came to the apartment *257 but left immediately, saying he would return later. A nightstand drawer, which the son stated usually contained drugs, was missing. There was no indication of forced entry and over $1600 was found in Mr. Parisi's wallet. During the crime scene investigation, the police found two bullets in the living room rug near Mr. Parisi's head. Two bullet holes were found in a pillow and one in a chair cushion. Powder burns indicated the pillow and cushion were used as muffling devices. A fingerprint taken from the telephone receiver in the bedroom was later identified as belonging to Masterson.
Three of Masterson's friends testified at trial that he admitted committing the murders. In very similar testimony, they revealed that when Masterson saw Ms. Savino in the bedroom, he made her roll over on the bed, put a pillow over her head, and shot her because he didn't want to leave any witnesses. He told one friend that an accomplice named Shelli had killed Mr. Parisi before the appellant shot Ms. Savino. He also admitted to one friend to have taken six Dilaudid pills from the nightstand drawer. Masterson told detectives that he had been to Parisi's apartment on the night in question to buy Dilaudids, as he had done in the past. However, he didn't have enough money to make the deal so he said he would return. Masterson claimed he had never been beyond the front door area of the apartment and had never been in the bedroom or used the telephone there. At trial, Masterson claimed he lied to his friends and to the detectives about his participation in the murders because he was afraid of Shelli.
At the penalty phase, Masterson presented evidence to suggest he was under the influence of alcohol and drugs on the night of the murders; that he began using narcotics while stationed in Viet Nam although he had used alcohol before that time; that after being wounded in combat he was honorably discharged and resumed his job as a plumbing apprentice; and that he began using Percodan and Dilaudid after relocating to Florida in 1981. Testimony was also presented that around the time of the murders Masterson was a heavy drinker, sometimes drinking up to a case of beer a day, as well as a drug abuser. The record also reflects that in the twenty-four hours preceding the murders Masterson drank between twelve and twenty-four beers, smoked marijuana, smoked and snorted cocaine, and injected some Dilaudid.
Two mental health professionals testified on behalf of Masterson in the penalty phase. Dr. Rappaport, a clinical psychologist, testified that Masterson suffered from delayed post-traumatic stress disorder brought on by his military service in Viet Nam, and was the most serious drug abuser in his experience. Masterson had been treated previously at a Veteran's Administration hospital because he began having nightmares and was increasing his alcohol and drug consumption in response. Masterson often slept in his living room on the couch, looking out the window constantly and keeping guard. The doctor concluded that appellant's judgment had probably been impaired on the night of the murders and that a violent response to a heated situation would be consistent with behavior under this disorder.
Dr. Merry Haber, also a clinical psychologist, testified similarly to Dr. Rappaport. She concluded that Appellant was using huge amounts of alcohol, cocaine, marijuana, and Dilaudid, was apparently intoxicated most of the time, and would act as a person suffering from mental impairment. Dr. Haber was also of the opinion that Masterson suffered from delayed post-traumatic stress disorder. She based her opinion on the symptoms Masterson described, including nightmares, and withdrawal from healthy social relationships. She testified "he was always watching, he was always looking with an eye in the back of his head and listening with an ear in the back of his head." She concluded that in addition to suffering from post traumatic stress disorder, Masterson was also psychologically impaired, conditions which could have affected his judgment at the time of the crimes. In addition, evidence was presented that Masterson was a good father and provided for his two sons, for his younger sister, and for his niece whenever possible.
*258 The jury found Masterson guilty of first-degree murder of Patricia Savino, guilty of second-degree murder of Joseph Parisi, and guilty of armed burglary, and recommended imposition of a life sentence for the Savino murder. The trial court, in rejecting the jury's recommendation and imposing the death sentence, found four aggravating factors: (1) the murder was committed in a cold, calculated, and premeditated manner; (2) the murder was committed while the defendant was engaged in armed burglary; (3) the murder was committed for the purpose of avoiding arrest; and (4) the defendant had been convicted of a prior violent felony. The trial court found no mitigating factors.

Guilt Phase
Appellant raises two challenges in the guilt phase of the trial. Masterson first claims that the trial court erred in permitting a death-qualified jury to be seated by permitting a state's challenge for cause against some jury panel members who stated they could not or possibly might not be able to impose the death penalty. We find this claim without merit. In Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the United States Supreme Court specifically determined that the dismissal of prospective jurors on these grounds does not violate the fair cross-section requirement of the sixth amendment nor the constitutional right to an impartial jury. See also Kennedy v. Wainwright, 483 So.2d 424 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986).
In his second point, Masterson asserts that the trial court erred in failing to suppress statements he gave that he never entered Parisi's bedroom. The record reflects that valid Miranda[*] warnings were given and that Masterson validly made the statements with knowledge that he was a suspect. We find this contention also without merit. We also find, after review of the entire record, that the evidence is sufficient to sustain his convictions.

Penalty Phase
Although there are other claims of error, we find dispositive Masterson's contention that the trial court erroneously overrode the jury's recommendation of life imprisonment. The trial court, in rejecting the jury recommendation, found that it was based on "some matter not reasonably related to a valid ground of mitigation." To the contrary, we find the evidence presented during the penalty phase, including the facts that Masterson was a wounded and honorably discharged Viet Nam veteran, that he was introduced to drugs in Viet Nam, that he suffered from post-traumatic stress disorder brought on by his service in Viet Nam, that he had consumed substantial amounts of drugs and alcohol on the day of the murder, together with the other matters presented in the penalty phase, was sufficient to establish a reasonable basis for the jury to find mitigating circumstances sufficient to recommend the imposition of a life sentence without possibility of parole for twenty-five years. See Fead v. State, 512 So.2d 176 (Fla. 1987); Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986); Norris v. State, 429 So.2d 688 (Fla. 1983).
We find the test which we enunciated in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), directing that a trial judge should override a jury's recommendation of life only where "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ," has not been met by the evidence in this case.
Accordingly, we affirm the conviction of John Patrick Masterson for the first-degree murder of Patricia Savino, but reverse the trial court's imposition of the death sentence and direct the imposition of a sentence of life imprisonment without possibility of parole for twenty-five years; we also affirm his convictions for second-degree murder of Joseph Parisi and armed burglary, and the sentences imposed for each of those offenses.
It is so ordered.
*259 McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).