**Leslie R. JONES, Petitioner–Appellee, Cross–Appellant,**

v.

**Richard L. DUGGER and Robert A. Butterworth, Respondents–Appellants, Cross–Appellees.**

**No. 87–3796.**

United States Court of Appeals, Eleventh Circuit.

Feb. 28, 1989.

Mark Menser, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellants, cross-appellees.

John B. Carr, Terry D. Terrell, Chief Asst. Public Defender, Pensacola, Fla., for petitioner-appellee, cross-appellant.

Before TJOFLAT, JOHNSON and CLARK, Circuit Judges.

TJOFLAT, Circuit Judge:

This is an appeal from the district court's grant of habeas corpus relief to a Florida death row inmate, Leslie R. Jones, who was convicted of murder in 1979.[1] The district court granted the relief—a new sentencing proceeding in the state trial court—because that court, in instructing the jury during the sentencing phase of Jones' trial, failed to inform the jury, as required by the progeny of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion), that it should consider all of the mitigating evidence in the record in deciding whether to recommend that Jones be sentenced to death or imprisonment for life.

The State appeals from the district court's grant of habeas relief. Jones cross appeals from the district court's refusal to set aside his conviction on the ground that he was denied effective assistance of counsel at trial. We find Jones' claim to be plainly meritless and summarily reject his cross appeal.[2] We agree with the district court that Jones is entitled to a new sen-

---

1. The facts underlying Jones' conviction are set out in detail in *Jones v. State*, 411 So.2d 165, 166–67 (Fla.), *cert. denied*, 459 U.S. 891, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982). We restate them in brief. Jones, a parolee, and an accomplice entered a liquor store to commit a robbery. The two clerks on duty were ordered to lie face down on the floor and were then shot execution style. One clerk was killed; the other survived although struck by two bullets, one in the chest and one in the head. She testified that the shots came from where Jones was standing. Three bullets were recovered, and one was conclusively identified as having come from a gun found in Jones' residence. Jones' accomplice testified that Jones told him that he shot the victims because they had recognized him. In addition to the testimony of these witnesses, the State introduced a tape-recorded confession Jones made following his arrest in which he admitted shooting the victims.

After the Florida Supreme Court affirmed Jones' conviction and death sentence, *id.*, Jones applied for collateral relief in the state trial court pursuant to Fla.R.Crim.P. 3.850. The trial court denied his application, and the Florida Supreme Court affirmed its decision. *Jones v. State*, 446 So.2d 1059 (Fla.1984). Having exhausted his state court remedies, Jones brought the habeas petition now before us, presenting twenty claims for relief. The district court rejected all but one of them. Only two of the claims in Jones' petition have been brought to us in these appeals.

2. Jones cited twenty-four instances where, according to him, his attorney's performance was substandard in a sixth amendment sense. The district court examined these at length and found them meritless. We likewise find no merit in them, and reject Jones' ineffective assistance claim without further discussion.

tencing proceeding and therefore affirm its issuance of the writ.

■ The eighth amendment, which is applicable to the states through the fourteenth amendment, requires that a jury in a capital case not be precluded from considering, as a mitigating factor, *any* aspect of a defendant's character or record that the defendant proffers as a basis for a sentence less than death. *See Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed. 2d 1 (1986); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). In charging the jury in this case, the trial court violated the command of *Lockett* and its progeny because it suggested that the only mitigating factors the jury could consider were those enumerated in the Florida death penalty statute.[3] Notwithstanding the presence in the record of mitigating evidence not included in the statutory list, the trial court instructed the jury that "[t]he mitigating circumstances which you may consider if established by the evidence are these ...," followed by the list of seven statutory mitigating circumstances.[4] This instruction is identical to the instruction we recently condemned in *Ruffin v. Dugger,* 848 F.2d 1512, 1518 (11th Cir. 1988), and is virtually indistinguishable from the instruction the Supreme Court condemned in *Hitchcock.*[5]

■ The State concedes that the trial court's instruction was erroneous. The State claims, however, that the error is harmless and that the verdict should therefore stand. It advances two independent arguments in support of its claim. First, the State argues that the nonstatutory mitigating evidence presented by the defense during the sentencing phase of Jones' trial would have had no effect on the jury's deliberations. Second, it argues that despite the judge's erroneous instruction to the jury, the judge nonetheless took the nonstatutory mitigating evidence into consideration in determining whether to accept the jury's recommendation that the death penalty be imposed; the erroneous instruction therefore caused Jones no prejudice. We discuss these arguments in order.

We recognize that *Lockett* error can be harmless. *See Hitchcock,* 481 U.S. at 398, 107 S.Ct. at 1824. If the state can prove beyond a reasonable doubt that the erroneous sentencing instruction did not contribute to the jury's sentencing recommendation, the error is harmless and the recommendation may stand. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). For example, if the defense produces no nonstatutory mitigating evidence, the judge's failure to instruct the jury that its consideration is not limited to the seven statutory mitigating circumstances would constitute harmless error and no reason to require resentencing would exist. Similarly, resentencing is not required where the nonstatutory mitigating evidence presented was so insignificant

---

3. Florida Statute section 921.141(6) provides:
   Mitigating circumstances shall be the following:
   (a) The defendant has no significant history of prior criminal activity.
   (b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
   (c) The victim was a participant in the defendant's conduct or consented to the act.
   (d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
   (e) The defendant acted under extreme duress or under the substantial domination of another person.
   (f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

   (g) The age of the defendant at the time of the crime.
   Fla.Stat. § 921.141(6) (1985).

4. The prosecutor exacerbated the impact of the court's erroneous instruction by stressing in his closing argument that the jury was to consider only the seven statutory mitigating circumstances and that despite the testimony of defendant's sister, "[t]here is no evidence of any mitigating circumstances [in this case]."

5. In *Hitchcock,* the trial judge instructed the jury that "[t]he mitigating circumstances which you may consider shall be the following...." The court then read the statutory mitigating factors set out in Fla.Stat. § 921.141(6). *See Hitchcock,* 481 U.S. at 398, 107 S.Ct. at 1824.

that it would not have altered the jury's decision. In this case, however, we are not confident that, had the jury considered the nonstatutory mitigating evidence, the outcome would have been the same.

The mitigating evidence in question consisted of the testimony of petitioner's sister, Mary Jones. She testified that prior to Jones' recent scrapes with the law,[6] he was "a very nice person [who] got along well with people [and] was never no trouble." She testified also that on several occasions during his recent incarceration, his jailer, Sergeant Johns, reported to her that Jones was a model prisoner who "got along well with him [and] never had any trouble."

This testimony is similar to the testimony at issue in *Skipper v. South Carolina,* 476 U.S. at 4, 106 S.Ct. at 1671. The Court in *Skipper* held that precluding the jury from considering evidence of the accused's good behavior during the seven months he spent in jail awaiting trial could not possibly be considered harmless. *Id.* at 7–8, 106 S.Ct. at 1673. Similarly, in the case before us "it appears reasonably likely that the exclusion of evidence bearing upon petitioner's behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury's decision to impose the death sentence." *Id.* at 8, 106 S.Ct. at 1673. Accordingly, the *Lockett* error was not harmless.

Because the trial judge considered Jones' nonstatutory mitigating evidence in reaching his sentencing decision, the State next argues that this "curative action" rendered the erroneous instruction harmless. We do not agree. This case is nearly identical to *Magill v. Dugger,* 824 F.2d 879, 894 (11th Cir.1987), also involving Florida's capital sentencing scheme, in which we held that a trial court cannot, by specifically considering nonstatutory mitigating evidence, cleanse a jury recommendation which is tainted by *Lockett* error. Because of the importance of the advisory jury in the Florida capital sentencing scheme, we held that *Lockett* "error can be cured only by a sentencing proceeding before a new advisory jury." *Id.* at 894.

We applied this same reasoning to jury recommendations which were tainted by *Caldwell* error[7] in our decision in *Mann v. Dugger,* 844 F.2d 1446 (11th Cir.1988) (en banc). We observed in *Mann* that "the Supreme Court of Florida has recognized that a jury recommendation of death has a *sui generis* impact on the trial judge, an impact so powerful as to nullify the general presumption that a trial judge is capable of putting aside error." *Id.* at 1454. Here, as in *Magill* and *Mann,* we conclude that, because the jury recommendation resulted from an unconstitutional procedure, the entire sentencing process has necessarily been tainted.[8] The trial judge's consideration of nonstatutory mitigating evidence, therefore, did not render harmless the *Lockett* error.

AFFIRMED.

---

**6.** Jones had previously been convicted of robbery and sentenced to prison. He was out on parole at the time he committed the murder in this case. *See supra* note 1.

**7.** *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), held that it was reversible error for the prosecutor and judge to make comments that would likely diminish the sentencing jury's sense of responsibility in the sentencing process.

**8.** In arguing the State's appeal to this panel, the assistant attorney general representing the State conceded that our en banc decision in *Mann* required us to affirm the district court's granting of the writ. The panel is, of course, bound by *Mann;* only the en banc court can set aside its holding.