**Bennie E. DEMPS,**
Petitioner–Appellant,

v.

**Richard L. DUGGER, as Secretary, Department of Corrections, State of Florida, Respondent–Appellee.**

No. 87–3767.

United States Court of Appeals, Eleventh Circuit.

March 28, 1989.

As Amended June 13, 1989.

Michael A. Mello, South Royalton, Vt., for petitioner-appellant.

Mark Menser, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

FAY, Circuit Judge:

This appeal concerns the third federal habeas corpus petition filed by Bennie E. Demps, pursuant to 28 U.S.C. § 2254. In 1978, Demps was convicted of the jailhouse murder of a fellow inmate and sentenced to death. His third habeas petition sets forth four claims for relief: 1) Petitioner's capi-

tal sentencing proceeding did not comport with *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), or *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and therefore, resentencing is required because the state cannot demonstrate that the error was harmless; 2) The comments made to the sentencing jury diluted their responsibility in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); 3) The state withheld critical exculpatory evidence regarding its witness, Larry Hathaway, in violation of petitioner's sixth, eighth and fourteenth amendment rights; and 4) Petitioner's trial counsel was prejudicially ineffective for failing to impeach Hathaway and for failing to introduce mitigating evidence regarding petitioner's background. The federal district court denied relief on all four claims.[1] We affirm.

## I. Background

### A. Facts

This court has already reviewed and set forth the facts giving rise to the petitioner's conviction. *See Demps v. Wainwright*, 805 F.2d 1426 (11th Cir.1986). We therefore only generally outline the facts established at trial. On September 6, 1976, Alfred Sturgis was found in his cell in Florida State Prison bleeding from stab wounds. On the way to the hospital, Sturgis in a dying declaration told A.V. Rhoden, a correctional officer, that Demps, Jackson and Mungin had been the assailants. At

the time of the stabbing, Demps was serving sentences for the first-degree murder of two persons and the attempted murder of another.[2]

Inmates Bennie Demps, James Jackson and Harry Mungin were indicted, tried and convicted of first degree murder. At trial, in addition to Rhoden's testimony regarding Sturgis' dying declaration, the state presented testimony of Larry Hathaway, a fellow inmate of the defendants. In exchange for Hathaway's testimony, the state agreed to transfer Hathaway to another correctional institution with his homosexual lover, Robert Zeigler.[3] Hathaway testified that as he walked along a prison corridor, he witnessed Mungin standing in a cell doorway, apparently acting as a lookout. As Hathaway passed by Mungin, he saw Demps holding Sturgis down while Jackson stabbed him. At the sentencing phase of the trial, the jury recommended the death penalty for Jackson and Demps, and life imprisonment for Mungin. The trial judge sentenced Mungin and Jackson to life, but sentenced Demps to death.

### B. Procedural Posture

On appeal, the Florida Supreme Court affirmed Demps' death sentence and the United States Supreme Court denied certiorari. *Demps v. State*, 395 So.2d 501 (Fla.), *cert. denied*, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).[4] Thereafter, petitioner

1. Demps also claims that Florida's capital sentencing statute is unconstitutional. Technically this claim is procedurally barred because he failed to raise this argument in district court. However, we can reject this argument on the merits since the Supreme Court plainly upheld the constitutionality of the statute in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). This holding was later reaffirmed in *Lockett v. Ohio*, 438 U.S. at 606, 98 S.Ct. at 2965.

2. Demps received the death penalty for these convictions. However, the death sentence was commuted to life imprisonment following *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

3. In a prior habeas corpus petition, this court denied Demps' challenge that the state court erred in excluding cross-examination regarding

Hathaway's homosexual relationship with Zeigler, allowing Demps to establish only that they were close friends. *See Demps v. Wainwright*, 805 F.2d 1426 (11th Cir.1986). The trial court, however, allowed Demps to fully cross-examine Hathaway regarding any transfer in exchange for his testimony. *Id.* at 1431.

4. The petitioner challenged his conviction on three grounds: 1) The state violated discovery rules and deprived petitioner of a valuable tool for cross-examination by not producing A.V. Rhoden's written statement of his conversation with Sturgis en route to the hospital; 2) The judge improperly instructed the jury regarding mitigating circumstances; 3) The disparity of sentences among Demps' codefendants violated the proposition that equally culpable defendants should receive equal sentences.

On September 9, 1980, Mr. Demps, along with other death row inmates, filed an application

filed a motion to vacate, set aside or correct the judgment which the state trial court denied without a hearing.[5] The Florida Supreme Court affirmed the trial court ruling on all claims except for the petitioner's claim of state interference with a defense witness, which was remanded for an evidentiary hearing. *Demps v. State*, 416 So.2d 808, 809 (1982). The trial court conducted a hearing and again denied the petitioner's motion. The denial was affirmed on appeal. *Demps v. State*, 462 So.2d 1074 (Fla.1984).

On March 28, 1985, Demps filed a petition for a writ of habeas corpus in federal district court raising six grounds for relief.[6] The district court denied relief on all grounds and this court affirmed. *Demps v. Wainwright*, 805 F.2d 1426 (11th Cir. 1986). The Supreme Court denied certiorari. *Demps v. Dugger*, —— U.S. ——, 108 S.Ct. 209, 98 L.Ed.2d 160 (1987). On December 17, 1985, the petitioner filed a second writ of habeas corpus alleging that the excusing of jurors opposed to the death penalty denied the petitioner an impartial jury from a cross-section of the community in violation of his sixth and fourteenth amendment rights. The district court dismissed the petition and the petitioner did not appeal.

The Governor of Florida signed a second death warrant and the petitioner's execution was scheduled for Thursday, November 5, 1987 at 7:00 a.m. The petitioner returned to the Florida Supreme Court seeking a stay of execution on the ground that his sentencing proceeding was unconstitutional under the authority of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). The Florida Supreme Court denied relief, finding the

*Hitchcock* error harmless. *Demps v. Dugger*, 514 So.2d 1092 (Fla.1987). Following this denial, the petitioner again filed an emergency motion to vacate the sentence in state trial court which was denied. On appeal, the Florida Supreme Court affirmed. *Demps v. State*, 515 So.2d 196 (Fla.1987). Thereafter, the petitioner filed his third petition for habeas relief in federal district court raising the four issues set forth above. The district court denied relief on all grounds and the petitioner appealed to this court challenging the district court's rulings. We review each issue respectively.

II. *Hitchcock* Claim

■ Petitioner first contends that according to *Hitchcock* the jury instructions unconstitutionally precluded the jury from considering mitigating circumstances not enumerated in the Florida death penalty statute, Fla.Stat. § 921.141 (1975). In *Hitchcock*, the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of non-statutory mitigating circumstances. The Supreme Court found this violated petitioner's constitutional right to "present [at the sentencing hearing] any and all relevant mitigating evidence that is available." *Hitchcock, supra*, at 399, 107 S.Ct. at 1824 (quoting *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)). The eighth and fourteenth amendments require the sentencer to consider all relevant mitigating evidence in capital cases. *Hitchcock*, 107 S.Ct. at 1822 (citations omitted); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 102

---

for extraordinary relief and petition for writ of habeas corpus in the Florida Supreme Court. Relief was denied. *Brown v. Wainwright*, 392 So.2d 1327 (Fla.), *cert. denied*, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).

5. Mr. Demps also applied for executive clemency, which was denied. On June 1, 1982, the Governor signed a death warrant.

6. The petition raised the following grounds for relief: 1) The state substantially interfered with a defense witness; 2) The state failed to reveal

the deal which had been made with its key witness, Larry Hathaway; 3) The trial court limited the jury's consideration of mitigating circumstances which violated petitioner's eighth and fourteenth amendment rights; 4) The trial court unconstitutionally limited the cross-examination of Larry Hathaway; 5) The petitioner's death sentence is disproportionate, arbitrary and capricious; and 6) The testimony of Wilda Paschall was wrongfully excluded at the state evidentiary hearing.

S.Ct. 869, 71 L.Ed.2d 1 (1982).[7]

■ In this case, the judge gave an instruction functionally identical to that given in *Hitchcock*.[8] Hence, we assume the jury did not consider any nonstatutory mitigating evidence in making their sentencing recommendation.[9] However, evidence in the record leads us to conclude that the judge in fact did consider the nonstatutory mitigating evidence in carrying out his role as the primary sentencer.[10] In this case, we refrain from deciding whether both the judge and the jury must refuse or be prohibited from considering nonstatutory mitigating evidence to constitute a *Hitchcock* error.[11] Since a harmless error does not

merit reversal, we address the preliminary question of whether the alleged *Hitchcock* error in this case is harmless.[12]

■ First, we stress that an alleged *Hitchcock* error is evaluated on a case-by-case basis. *See Knight v. Dugger*, 863 F.2d 705 (11th Cir.1988). To determine whether an error occurred and whether it affected the jury requires an indepth review of the entire record. *Id.* at 708. Further, evaluating whether an error is harmless is governed by the strict *Chapman* criterion. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The error must be harmless beyond a rea-

---

7. In *Lockett*, the Supreme Court recognized that "in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes.... The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence." *Lockett*, 438 U.S. at 604–605, 98 S.Ct. at 2965.

8. The jury instructions in Mr. Demps' case stated:

> [A]t the conclusion of the taking of the evidence and after argument of counsel, you will be instructed on the factors in aggravation and mitigation you may consider. The mitigating circumstances which you may consider, if established by the evidence, are as follows: [listing statutory mitigating circumstances].

Record on Appeal at pp. 1095–96. The jury instructions in the *Hitchcock* case stated:

> [You will be instructed] on the factors in aggravation and mitigation that you may consider under our law. [T]he mitigating circumstances which you may consider shall be the following: [listing the statutory mitigating circumstances].

*Hitchcock*, 107 S.Ct. at 1824.

9. We have held that allowing the defendant to introduce nonstatutory mitigating evidence is meaningless if the jury is instructed not to consider it in making its sentencing recommendation. *Magill v. Dugger*, 824 F.2d 879, 893 (11th Cir.1987).

10. The trial judge indicated that these standard jury instructions would not limit his own ability to consider nonstatutory mitigating evidence. During the charge conference, the judge stated that: "[t]here's no doubt that the statute uses the term limited as far as to aggravating circumstances and does not use that term, of course, mitigating. The case law on it boils down to

not only the mitigating factors enumerated in the statute, but any relevant information that would go to mitigation." Transcript vol. V at p. 996.

11. In *Elledge v. Dugger*, 823 F.2d 1439 (11th Cir.1987), this court held that no *Hitchcock* error occurred despite improper jury instructions, since the judge clearly had the proper view of the law and considered the nonstatutory mitigating circumstances in carrying out his role as primary sentencer. That portion of the opinion was later withdrawn and thus, has no precedential value. *Elledge v. Dugger*, 823 F.2d 1439 (1987), *opinion withdrawn in part*, 833 F.2d 250 (11th Cir.1988), *cert. denied*, — U.S. —, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988). However, the issue was reconsidered and determined by this court in *Jones v. Dugger*, 867 F.2d 1277 (11th Cir.1989). Our court in *Jones v. Dugger* held that where there is *Lockett* error in the court's instructions to the advisory jury, the sentencing judge's consideration of nonstatutory factors in reaching his sentencing decision will not render the erroneous instruction harmless. Hence, in this case, the judge's consideration of the nonstatutory mitigating evidence does not render the *Lockett* error harmless. Instead, we consider whether the alleged nonstatutory mitigating evidence, if considered by the jury would have affected its sentencing decision.

12. Although this court has applied harmless error analysis to *Hitchcock* errors in prior decisions, petitioner urges us to reexamine this issue. We believe that our post-*Hitchcock* opinions make it clear that harmless error analysis is appropriate for a *Hitchcock* violation. *See Knight v. Dugger*, 863 F.2d 705 (11th Cir.1988); *Hargrave v. Dugger*, 832 F.2d 1528, 1532 (11th Cir.1987); *Armstrong v. Dugger*, 833 F.2d 1430, 1436 (11th Cir.1986); *Magill v. Dugger*, 824 F.2d 879 (11th Cir.1987); *Clark v. Dugger*, 834 F.2d 1561 (11th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988).

sonable doubt. *Id.* at 24, 87 S.Ct. at 828. To be harmless in the *Hitchcock* context, the court must determine beyond a reasonable doubt that the proposed mitigating evidence regarding the defendant's character would not have influenced the jury to recommend a life sentence.

In this case, we conclude beyond a reasonable doubt that the proposed mitigating evidence would not have persuaded the jury to recommend life. Petitioner presented four types of evidence which he alleges would have influenced the jury to recommend life. First, petitioner argues that his "honorable military combat service" would have supported a jury recommendation of life. The evidence, however, reflected something quite different than "honorable military combat service." On November 20, 1969, Demps enlisted in the United States Marine Corps for a two year period. His service record revealed one special court-martial conviction and two nonjudicial punishments for five assaults, communication of a threat, and disobeying a lawful order. Due to these offenses, after eleven months of service, Demps received a dishonorable discharge in November, 1970.[13] In January, 1979, under a special discharge review program, Demps' dishonorable discharge was upgraded to a general discharge. Contrary to petitioner's allegations that he had served in military combat, the record reflects no evidence indicating any overseas combat experience. Rather, the record shows that Demps had been stationed at Camp LeJeune, North Carolina. We do not believe Demps' military record reflected at all favorably on his character and hence, we are persuaded that the evidence would not have influenced the jury to recommend life.

Second, petitioner presented evidence to the jury of his history of drug abuse and argues that this was evidence which would have mitigated his death sentence. It is true that a history of drug addiction can be considered by juries as nonstatutory mitigating evidence. *See*

*Hargrave v. Dugger*, 832 F.2d 1528, 1534 (11th Cir.1987); *Fead v. State*, 512 So.2d 176, 179 (Fla.1987) (jury could have found as mitigating, evidence that the defendant committed crime under the influence of alcohol). However, in this case, we do not think this evidence would have influenced the jury's recommendation. The evidence available indicated that Demps had a history of drug addiction prior to being admitted into the correctional system. The murder of Alfred Sturgis occurred in prison and no evidence exists to show that drugs or treatment for drug dependency in any way influenced Demps' participation in this murder. Therefore, while the evidence of a history of drug addiction can be mitigating evidence, we believe that the circumstances in this case indicate beyond a reasonable doubt that this evidence would not have influenced the jury to mitigate Demps' sentence.

Third, petitioner asserts that his record indicated he presented no problems during his seven year prison term prior to the stabbing. Like his history of drug abuse, this evidence can be classified as mitigating. *See, e.g., Skipper*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (evidence that petitioner was well-behaved and well-adjusted in prison was relevant mitigating evidence). However, quite to the contrary, the presentence investigation report indicated that Demps had a prison record of continuing disciplinary problems. In our opinion, Demps' record would not have affected the mind of a juror in any way where the murder for which the jury recommended death occurred in the *prison*.

Finally, petitioner stresses that the two co-perpetrators of the murder received a life sentence while he alone was sentenced to death. Petitioner claims that this should be considered as mitigating. Petitioner relies on the language in *Downs v. Dugger*, 514 So.2d 1069 (Fla.1987), where the Florida Supreme Court stated that it "has recognized as mitigating the fact that an ac-

---

13. In recommending a dishonorable discharge, a reviewing officer stated that "[t]he nature of his offenses indicate that he is insubordinate and has no respect for constituted authority. As is evidenced by the short time between his court-martial and his next infraction he is not amenable to rehabilitation." Appendix, Memorandum of Review, Oct. 29, 1970.

complice in the crime in question, who was of equal or greater culpability, received a lesser sentence than the accused." *Id.* at 1072 (citations omitted). However, in reviewing Demps' sentence as compared to that of his co-perpetrators, the Florida Supreme Court also recognized that "only Demps had the loathsome distinction of having been previously convicted of the first-degree murder of two persons and attempted murder of another, escaping the gallows only through the intervention of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)." *Demps v. Dugger,* 514 So.2d 1092, 1093 (Fla.1987). We conclude that Demps' prior criminal record was sufficient to justify imposing a more serious penalty.

Since we find beyond a reasonable doubt that the evidence excluded from the jury's consideration would not have affected its sentencing recommendation, we conclude that any error which may have occurred was harmless and therefore, resentencing is not required.

III. Successive Applications and Abuse of the Writ

Because petitioner has either previously raised the grounds for relief which follow or failed to raise them when the facts and law were readily accessible, we conclude that petitioner's last three claims constitute successive claims or an abuse of the writ and thus are procedurally barred.

For purposes of analyzing petitioner's final three issues, we will attempt a concise review of when a claim may be classified as successive or as an abuse of the writ. Rule 9(b) of the Rules Governing Section 2254 Cases deals with successive habeas petitions. It provides that the judge may dismiss a second or successive habeas petition where 1) "it fails to allege new or different grounds for relief and the prior determination was on the merits," or 2) "if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." This rule codified many of the judicially developed principles regarding successive habeas petitions. *See* Advisory Committee

Note, *Federal Civil Judicial Procedure and Rules* (1988).

■ As the rule indicates, a successive application involves a new habeas application which sets forth an identical ground for relief as was raised in an earlier application. *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The identical ground for relief may be denied even when supported by different factual allegations or legal arguments, or when couched in different language. *Id.* at 16, 83 S.Ct. at 1077; *see, e.g., Raulerson v. Wainwright,* 753 F.2d 869, 873 (11th Cir. 1985) (different factual support for same legal argument); *United States v. Jones,* 194 F.Supp. 421 (D.C.Kan.1961), *aff'd mem.,* 297 F.2d 835 (10th Cir.1962) (claim couched in different language). The government carries the burden to plead abuse of the writ. *Sanders,* 373 U.S. at 10, 83 S.Ct. at 1074. However, once the government has done this, the petitioner has the burden of proving that he has not abused the writ. *Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).

■ Even if the prior claim was denied on the merits, an applicant is entitled to show that in the interest of justice the claim should be redetermined. *Sanders,* 373 U.S. at 16, 83 S.Ct. at 1077. If factual issues are involved, the applicant may obtain reconsideration of the claim by showing that the evidentiary hearing on the prior application was not full and fair. *Id.* at 17, 83 S.Ct. at 1078. If legal questions are involved, the applicant may show that an intervening change in the law occurred or a similar justification prevented the applicant from arguing a crucial point. *Id.*

■ An abuse of the writ can also involve situations where the claim was not asserted in a prior application or where the claim was presented earlier, but not adjudicated on the merits. If the claim was not asserted in a prior proceeding, the petitioner must show that the failure to present the ground did not result from intentional abandonment or withholding, or inexcusable neglect. *Witt v. Wainwright,* 755 F.2d

1396, 1397 (11th Cir.) *cert. denied,* 470 U.S. 1039, 105 S.Ct. 1415, 84 L.Ed.2d 801 (1985). For example, an abuse of the writ can occur where a petitioner deliberately refrains from asserting one of two grounds for relief in the first petition in an attempt to obtain two hearings instead of one. *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1078. However, a retroactive change in the law or newly discovered evidence may justify the petitioner's failure to assert the claim earlier. In any event, a court must reach the merits of the claim if the ends of justice so require. *Id.* Within this framework, we analyze petitioner's final three grounds for relief.

## A. *Caldwell* Claim

 First, petitioner contends that the prosecutor and the judge misled the jury as to its proper role in capital sentencing which diminished its responsibility in violation of the eighth and fourteenth amendments. *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). We conclude that petitioner's failure to raise this claim in an earlier petition constitutes an abuse of the writ.

Petitioner's failure to raise this claim in his second habeas petition is the result of inexcusable neglect. The United States Supreme Court issued the *Caldwell* decision on June 11, 1985. Petitioner filed his second petition for habeas corpus relief over six months later, on December 17, 1985, without raising the *Caldwell* claim. *See, supra* note 5. Hence, petitioner reasonably should have known of the law and raised this claim in his second petition.

 Further, the ends of justice do not require consideration of this claim. No change in the intervening law occurred and petitioner has pointed to no other circumstances to explain his failure to raise the claim in an earlier petition. We conclude that petitioner has failed to carry his bur-

den of disproving an abuse of the writ and therefore, we deny relief on this ground.[14]

## B. Exculpatory Evidence Claim

 Petitioner also contends that the state withheld critical exculpatory evidence regarding its key witness, Larry Hathaway. Specifically, petitioner asserts that the state withheld evidence regarding 1) Larry Hathaway's complicity in the crime, 2) the true deal the state had with Hathaway, and 3) Hathaway's mental illness, and propensity to lie. Petitioner contends that the withholding of this evidence violated his sixth, eighth and fourteenth amendment rights.

Demps raised the same claim in his first habeas petition. *See supra* note 6. In his first habeas petition, Demps argued that the state withheld exculpatory evidence regarding the deal made with Hathaway (i.e. a memorandum written by a prison official regarding Hathaway's transfer to another correctional facility). *See Demps v. Wainwright,* 805 F.2d 1426, 1432 (11th Cir.1986). Addressing the merits of the claim, we rejected that the alleged withholding of this evidence violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Demps v. Wainwright,* 805 F.2d at 1432.

Similarly, in his present petition, Demps raises an identical claim, but has asserted different factual support. In addition to his prior allegation that the state withheld evidence regarding the deal made with Hathaway, petitioner alleges that the state withheld evidence regarding Hathaway's complicity in the crime and his propensity to lie. This claim, like the claim asserted in the first habeas petition, alleges suppression of evidence aimed at impeaching Hathaway's testimony. Petitioner is attempting to revive his initial claim by rephrasing it with different factual support. No evidence exists to indicate petitioner was hampered in any way from asserting these factual grounds when he raised this claim

---

**14.** Were we to reach the merits of the *Caldwell* claim, it appears the judge's and prosecutor's statements to the jury did not minimize the importance of the jury's role in sentencing. Rather, the statements are of the type we upheld in *Harich v. Dugger,* 844 F.2d 1464 (11th Cir. 1988). The statements merely explained to the jury the respective functions of the judge and jury.

previously. Hence, we conclude that the assertion of this claim in petitioner's third habeas petition constitutes an abuse of the writ. *See In re Shriner,* 735 F.2d 1236 (11th Cir.1984).

### C. Ineffective Assistance of Counsel

█ Finally, petitioner asserts that trial counsel's failure to effectively impeach Hathaway and to present compelling mitigating evidence constituted ineffective assistance of counsel. Since petitioner presents no reasonable justification for his failure to raise this claim in a prior petition, we deny this claim as an abuse of the writ. Moreover, even if we were to address the merits, it is apparent that petitioner does not state a viable ineffective assistance of counsel claim. Petitioner identifies no specific act or omission of counsel which is allegedly the result of unreasonable professional judgment. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

### IV. Conclusion

Because we find that any *Hitchcock* error which occurred in this case was harmless, resentencing is not required. Further, since petitioner either failed to raise his last three claims in a prior petition or had presented these claims previously, their assertion in this third habeas petition constitutes an abuse of the writ. Therefore, we affirm the district court's denial of relief on all of the asserted grounds.

AFFIRMED.

JOHNSON, Circuit Judge, concurring in part, and dissenting in part:

I concur in the majority's disposition of the petitioner's second, third, and fourth claims for relief and with the majority's determination that *Hitchcock* error was committed at petitioner's sentencing hearing. However, because of the insufficiency of the record before us, I must respectfully dissent from the majority's finding that the error was harmless.

The majority is correct in asserting that *Hitchcock* error may be harmless in some cases. *See Clark v. Dugger,* 834 F.2d 1561, 1569-70 (11th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988) (error harmless where "there simply were no nonstatutory mitigating circumstances to consider"); *see also Knight v. Dugger,* 863 F.2d 705, 708-10 (11th Cir. 1988) (dicta that *Hitchcock* error may be harmless). However, this Court has only once found *Hitchcock* error to be harmless, *see Clark, supra,* and the Supreme Court has never found the error to be harmless in its four reversals of death sentences for failure of the sentencer to consider nonstatutory mitigating circumstances. *See Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

In addition, a recent decision from this Court emphasized the narrow range of situations in which *Hitchcock* error may be harmless. In *Knight, supra,* the State of Florida argued that the failure of a jury to consider all mitigating factors was harmless because "so many aggravating factors were found (four) that no amount of nonstatutory mitigating evidence could change the result in the case." 863 F.2d at 710. In rejecting the state's reasoning, we stated:

No authority has been furnished for this proposition and it seems doubtful that any exists. The State's theory, in practice, would do away with the requirement of an individualized sentencing determination in cases where there are many aggravating circumstances. It is this requirement, of course, that is at the heart of *Lockett* and its progeny.

*Id.* The *Knight* decision leaves little room for the application of harmless error analysis, except in the situation where no nonstatutory mitigating evidence could have been proffered. *See Clark, supra.*

In fact, this is what the majority holds— that Demps' evidence was not mitigating at all. If Demps has no true mitigating evidence to offer, then it must be conceded that any error in the jury instructions was

harmless. However, the district court below made no ruling as to the quality or quantity of mitigating evidence. In the absence of factual findings on Demps' claims of mitigating evidence, this Court should not make any determination on the question of harmlessness.[1]

In the district court below, Demps claimed that the jury was improperly prevented from considering evidence of what he alleged to be an honorable military record, good adjustment to prison, a history of drug addiction, and an unequal sentence received by a co-perpetrator.[2] If any of his claims were true, excluding them from the jury's consideration would have constituted reversible error. However, the district court made no findings as to the truthfulness of Demps' claims. It instead held on the basis of *Elledge v. Dugger,* 823 F.2d 1439 (11th Cir.1987) (per curiam), *opinion withdrawn in relevant part,* 833 F.2d 250 (11th Cir.1988), *cert. denied,* —— U.S. ——, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988), that the trial judge's consideration of all mitigating factors rendered the erroneous jury instructions harmless. Its disposition of the case leaves us no basis upon which to make a ruling regarding the validity of Demps' factual claims of the existence of mitigating factors.

The determination of whether the error committed in Demps' case was harmless or not depends entirely on the truth of his claim that unconsidered mitigating factors existed. Without an evidentiary hearing having been conducted below, it is inappropriate for this Court to pass upon such crucial facts *de novo. See United States v. C.G.,* 736 F.2d 1474, 1479 (11th Cir.1984); *United States v. Johnson,* 700 F.2d 699, 701 (11th Cir.1983); *United States v. Robinson,* 625 F.2d 1211, 1217 (5th Cir.1980). The parties' briefs present two entirely different versions of the same relevant facts. Our job is normally to review the factual findings of lower courts and not to make such finding ourselves. Consequently, I would remand the question of the existence of mitigating factors to the district court for an evidentiary hearing. *See Ruffin v. Dugger,* 848 F.2d 1512, 1519–20 (11th Cir. 1988) (per curiam) (Tjoflat, J., dissenting) (remand to district court for hearing on harmlessness of *Hitchcock* error would be appropriate).

CLARK, Circuit Judge, specially concurring:

I concur that the appropriate disposition of this case is an affirmance of the district court's denial of relief. Judge Fay, Judge Johnson, and I all agree that there was an erroneous *Hitchcock* instruction. Our disagreement over defining the issue in the case is the reason our analyses differ. I am unable to join Judge Fay's opinion because he bases his analysis on the harmlessness of *Hitchcock* error. However, I do not agree with Judge Johnson that Demps presented any evidence of nonstatutory mitigating circumstances that is even arguably credible. Since Demps has not presented such evidence, the petition should be denied.

Judge Fay concludes:

To be harmless in the *Hitchcock* context, the court must determine beyond a rea-

---

1. The "record" to which the majority refers is woefully incomplete. For example, although some documents indicate that Demps had a less than distinguished service record, other partial records before us indicate that Demps may have suffered a racially motivated beating while in the military, and may have been railroaded into accepting his discharge. In addition, the majority, based on records of Demps' criminal history, confidently finds that it was appropriate for Demps to have received a penalty greater than that of his co-perpetrators. However, the criminal histories of his co-perpetrators are not part of the record. When a life hangs in the balance, the need for a fully developed record is imperative.

2. Such evidence is considered to be mitigating at the penalty phase of a capital case. *See Masterson v. State,* 516 So.2d 256, 258 (Fla.1987) (vacating death sentence imposed by judge who failed to find defendant's military record and history of drug abuse to be mitigating); *Skipper,* 476 U.S. at 8, 106 S.Ct. at 1673 (vacating death sentence where testimony of defendant's good adjustment to prison was excluded); *Hargrave v. Dugger,* 832 F.2d 1528, 1534 (11th Cir.1987) (finding history of drug abuse to be a mitigating factor); *Brookings v. State,* 495 So.2d 135, 143 (Fla.1986) (vacating death sentence imposed by judge over jury's recommendation of life imprisonment where co-perpetrators received lesser punishment).

sonable doubt that the proposed mitigating evidence regarding the defendant's character would not have influenced the jury to recommend a life sentence.

In this case, we conclude beyond a reasonable doubt that the proposed mitigating evidence would not have persuaded the jury to recommend life. Panel op. at 1390. I believe that the law of the circuit is as Judge Johnson relates. This court does not undertake the task of weighing the nonstatutory mitigating evidence against the statutory aggravating circumstances to determine whether the evidence would have persuaded the jury to recommend life. *Knight v. Dugger,* 863 F.2d 705 (11th Cir.1989), stands for that proposition.

To constitute a potential *Hitchcock* error there must be (1) an instruction to the jury that excludes the jurors from considering nonstatutory mitigating evidence *and* (2) the availability of nonstatutory mitigating evidence. There are cases where the evidence was heard but excluded from consideration and other cases where it was not even offered because Florida law at the time taught that such evidence was not admissible. This case is not a potential *Hitchcock* error case. Although there was an erroneous *Hitchcock* instruction, there has been no showing that any credible nonstatutory mitigating evidence was presented to the jury. Moreover, the record indicates that counsel did not believe he was limited to presenting only statutory mitigating circumstances.[1] If such evidence exists, the case should be returned to the state court for resentencing as was done in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).

The evidence urged to be mitigating is divided into four categories: (1) evidence of Demps' military record, (2) his good adjustment to prison, (3) a history of drug addiction, and (4) the unequal sentence received by his accomplices. Although all four of these factors can be mitigating, there are no *credible facts* in the record to show that these mitigating facts exist in this case.

At the penalty phase, defense counsel presented Demps' military file to the jury. He argued that Demps had an honorable record in the Marines and that he was wounded in combat. As Judge Fay points out, the record shows that Demps was initially given an undesirable discharge that was later upgraded to a general discharge. The record also reflects that Demps was not wounded in combat.[2]

Defense counsel also argued that Demps had no disciplinary problems in prison. Demps' presentence investigation report, which is part of the record, belies that allegation. He had sixteen charges against him at the Florida State Prison between September 28, 1971 and December 1, 1977, not including his participation in the murder of Sturgis. These offenses included attempting to escape, creating disturbances, flooding his cell, interfering with officers, fighting, destroying state property and inciting a minor disturbance.

Defense counsel argued that Demps' history of drug addiction was relevant mitigating evidence. This addiction predated his 1971 conviction and imprisonment for murder of two persons locked in the trunk of an automobile and there is no evidence in the record to show that Demps was addicted at the time of the murder we are concerned with. Although there is passing reference in the psychologist's report that drug addiction "may have resulted in the kind of brain damage suggested by current test results," (Appendix BB, Record Excerpts) there is no evidence that the drug addiction affected Demps at the time of this murder.

Finally, appellant argues that his accomplices' life sentences could have been considered as mitigating evidence by Demps'

---

1. At trial, defense counsel and the trial judge agreed that the statutory list of mitigating circumstances was not exclusive. Transcript, Vol. V, at 995–96.

2. It appears that the basis for counsel's argument that Demps was wounded in combat came from Demps' initial medical classification at Florida State Prison. Those records stated that Demps had a bullet wound in the leg from the service.

sentencing jury. I find that argument unpersuasive in this case and uncontrolled by the authorities cited in Judge Johnson's dissent. In this case, all three perpetrators were convicted in one single trial. The jury returned death recommendations for Demps and Jackson, but gave a life recommendation for co-defendant Mungin. The trial judge overrode the recommendation as to Jackson. The appellant's argument therefore is that Mungin's life sentence was a nonstatutory mitigating circumstance the jury could have considered when sentencing Demps. I simply cannot understand the argument in this case. This is not comparable to the scenario where co-defendants are tried separately, and the triggerman and leader receives a life sentence, while a youthful co-perpetrator who merely accompanied the killer receives the death penalty. Under those facts, I would agree that the jury should have evidence of the accomplice's sentence, however, those are not the facts here. In this case, Demps held Sturgis down while Jackson stabbed him. I fail to see how the life sentence given to Mungin, who was the lookout, was mitigating evidence for Demps.

In this case, defense counsel argued that nonstatutory mitigating circumstances existed to spare Demps' life. A thorough review of the record demonstrates that there are no facts to support the existence of these mitigating circumstance. At this stage after several appeals to the Florida Supreme Court, U.S. Supreme Court and to our court, it is incumbent on counsel for the petitioner to present in a credible form facts which counsel can prove true in an evidentiary hearing. Normally, this is not a problem since the penalty phase will contain the testimony of witnesses with respect to such nonstatutory mitigating circumstances.[3] If the state contests the veracity of the evidence, an evidentiary hearing might be in order. In this case, however, the record demonstrates that these mitigating circumstances do not exist. The petitioner has failed to allege facts to prove

the existence of nonstatutory mitigating circumstances. In such a case, an evidentiary hearing is not required.

For the foregoing reasons, I do not see the issue as requiring a *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967), harmless error analysis. Nor do I see this as a case that requires an evidentiary hearing since no new nonstatutory evidence is adduced by petitioners. This case is comparable to *Clark v. Dugger*, 834 F.2d 1561, 1569–70 (11th Cir.1987), cert. denied, —— U.S. ——, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988). There the panel found:

> Here, however, there simply were no nonstatutory mitigating circumstances to consider. Clark did not introduce any evidence that would support the existence of a nonstatutory mitigating circumstance. As explained *supra*, Clark's counsel, after her investigation, made a tactical decision that any testimony at the penalty phase could only prove harmful. Thus, Clark failed to introduce any mitigating evidence whatever.

834 F.2d at 1569 (footnotes omitted).

Admittedly the *Clark* panel held that "any *Hitchcock* error was harmless under *Chapman v. California*." This is the wrong label applied by the *Clark* panel and by Judge Fay. Where there is no nonstatutory mitigating evidence there can be no *Hitchcock* error and harmlessness need not be considered.

In conclusion, I deem it an inappropriate function for a federal court to weigh nonstatutory mitigating evidence against aggravating circumstances and decide whether a petitioner should get the death penalty as an alternative to a resentencing hearing. That is an invasion of the separate states' rights and obligations for their courts to insure appropriate sentencing in death penalty cases. At the same time, a federal court should not put blinders on when faced with a *potential Hitchcock* error. It is proper for the court to examine a peti-

---

3. Additionally, if the *Hitchcock* claim is premised on the fact that counsel believed himself limited to statutory mitigating evidence, petitioner will append affidavits, psychiatric or psy-chological reports, and school or medical records to illustrate the evidence that was not presented.

tioner's alleged nonstatutory mitigating evidence to determine if such evidence does in fact exist. If it is nonexistent, the case should stop there. If there is credible evidence demonstrated by the petitioner, we should return the case to the state court for resentencing. In this case, there being no credible evidence, the petition should be denied.